**Elvin JACKSON, Appellee,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Appellant.**

**No. 85–2277.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1986.

Decided Oct. 10, 1986.

Douglas C. Herbert, Jr., Washington, D.C., for appellant.

Susan M. Rogers, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, BRIGHT and ROSENN,* Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Missouri Pacific Railroad (MOPAC) appeals from a judgment of the district court which held that MOPAC discriminated and retaliated against a black employee, Elvin Jackson, on the basis of his race in violation of 42 U.S.C. §§ 1981, 2000e and 1988. For reversal, MOPAC asserts that the district court's findings are inadequate under Fed.R.Civ.P. 52. MOPAC also contends that the district court erred in finding that it discriminated against Jackson (1) in denying him a promotion, and (2) in the assignment of relief foreman work. MOPAC further argues that the district court erroneously concluded that MOPAC discriminated and retaliated against Jackson in discharging him. Finally, MOPAC asserts that the district court's damage award must be reversed. We affirm in part, and reverse in part and remand for further proceedings.

## I. BACKGROUND

MOPAC hired Jackson in its North Little Rock terminal as a laborer in February of 1970, and promoted him to a journeyman carman position on April 1, 1973. In April of 1977, Jackson began working intermittently as a relief car foreman, and inquiring about promotion to a permanent car foreman position. According to the testimony of MOPAC officials, this promotion required at least three months of relief car foreman experience. MOPAC officials also testified that the railroad had a "preference" for promoting foremen away from their home base. In general, local officials would recommend candidates for promotion to MOPAC officials in St. Louis, who made the ultimate decision. Although Jackson testified that local officials indicated they were considering him for promotion as early as 1978, they did not formally recommend him for promotion until the fall of 1979.

In addition, under the collective bargaining agreement, a relief foreman could obtain an "automatic" promotion to permanent car foreman after performing relief work four days per week for a period of ninety days. To avoid such automatic promotions, MOPAC officials regularly "broke" the service of relief foremen, including Jackson, before they completed this ninety-day period.

Throughout 1978, 1979, and 1980, Jackson performed relief foreman work on a regular basis. In 1978 and 1979, MOPAC promoted four white carmen to the permanent car foreman position in the North Little Rock terminal. Prior to promotion, two of these employees were stationed at the North Little Rock terminal, while the other two transferred from out of town.

In January of 1980, MOPAC promoted Jackson to a permanent car foreman position in Kansas City, Missouri. However, due to the health of his family and the lack of job opportunities for his wife, Jackson resigned the position. Exercising his seniority rights as a carman, Jackson returned to work in the North Little Rock terminal in May of 1980. Again, Jackson regularly performed relief car foreman assignments.

In December of 1980, MOPAC "automatically" promoted a white employee from the North Little Rock terminal to a permanent car foreman position. In February of

---

* The HONORABLE MAX ROSENN, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1981, MOPAC promoted a black carman (also from the North Little Rock terminal) to a permanent car foreman position in the North Little Rock terminal in settlement of a lawsuit, and also promoted a white employee from out of town to a similar position. In February of 1982, MOPAC promoted another black employee (from the North Little Rock terminal) to a permanent car foreman position in the North Little Rock terminal.[1]

In 1979, Jackson began to complain to MOPAC officials of discrimination in the scheduling of relief car foreman assignments. Although he was the most senior relief car foreman, Jackson generally received third shift and weekend schedules. In April of 1981, MOPAC stopped assigning Jackson relief car foreman work. Jackson testified that he requested relief car foreman work at a meeting with MOPAC officials in July of 1981. However, MOPAC officials testified that at this meeting Jackson refused to accept such assignments until MOPAC changed its scheduling procedures to be unbiased. Jackson testified that he again specifically requested relief car foreman work in late 1981, but received no assignments.

In December of 1981, MOPAC disciplined Jackson for failing to inspect and repair defects on a train which derailed. Jackson waived formal investigation and accepted a thirty-day deferred suspension.

On March 1, 1982, Jackson filed this suit alleging that MOPAC denied him a promotion based on his race. On August 5, 1982, Jackson inspected a train which later derailed sixty miles from the North Little Rock terminal. An investigation revealed the probable cause of the derailment to be lack of oil in a journal box which caused the box to overheat and burn out. After a hearing, MOPAC dismissed Jackson on August 22, 1982, for failure to properly inspect and service the journal box which caused the derailment. At the same time,

MOPAC discharged Jackson's co-worker for the same reason. After Jackson appealed his discharge, MOPAC reinstated Jackson as a carman in June of 1983.

In March and July of 1983, Jackson amended his complaint to allege that his discharge constituted further discrimination and retaliation for filing this lawsuit against MOPAC.

After a four-day bench trial, the district court held that MOPAC: (1) denied Jackson a promotion to permanent car foreman in the North Little Rock terminal based on his race; (2) denied Jackson relief car foreman assignments after April of 1981 based on his race; (3) discharged Jackson based on his race and in retaliation for filing this lawsuit. The district court ordered MOPAC to appoint Jackson to the next available permanent car foreman position in the North Little Rock terminal, and to backdate Jackson's seniority in this position to June 1, 1979. The district court further ordered MOPAC to pay Jackson the difference in salary and benefits he would have received as permanent car foreman retroactive to June 1, 1979, and awarded Jackson backpay and benefits for the period during which he was discharged. Finally, the district court directed the parties to stipulate to the exact amount of backpay due Jackson, and retained jurisdiction of the matter to resolve issues of damage calculations.

## II. DISCUSSION

### A. Standard of Review

MOPAC first asserts that the district court's findings of fact are conclusory and lack sufficient specificity and detail to afford this court a clear understanding of the basis of its decision. *See Christensen v. Great Plains Gas Co.*, 418 F.2d 995, 1000 (8th Cir.1969). In addition, MOPAC notes that the district court practically adopted verbatim Jackson's proposed findings of fact and conclusions of law. MOPAC contends that these deficiencies entitle this court to employ a *de novo* standard of

---

**1.** In sum, from 1978 through 1982, MOPAC promoted eight employees to permanent car foreman positions in the North Little Rock terminal: six of those promoted were white and two were black (with one black promotion resulting from a settlement of a lawsuit against MOPAC); and five were promoted from the North Little Rock terminal staff.

review, rather than the clearly erroneous standard of Fed.R.Civ.P. 52(a). We disagree.

In *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504 (1985), the Supreme Court reaffirmed that Fed.R. Civ.P. 52(a) bars reviewing courts from deciding factual issues *de novo,* and requires the exercise of even greater deference to findings based on credibility determinations. *Id.* 105 S.Ct. at 1512. In *Anderson,* the Supreme Court also observed that "even where the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." *Id.* at 1511 (citations omitted). Because this case presents factual findings of intentional discrimination and retaliation, we must employ the clearly erroneous standard of review. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). Under this standard of review, we turn to MOPAC's allegations of error.

## B. Discriminatory Promotion

■ In deciding Jackson's discrimination claims, the district court applied the three-stage analysis for disparate treatment claims set forth in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). MOPAC contends that the district court erred in finding that it discriminatorily denied Jackson a promotion to the permanent car foreman position in the North Little Rock terminal. In support of this contention, MOPAC makes four specific allegations of error. First, MOPAC disputes the finding that Jackson qualified for promotion in April of 1977. MOPAC asserts and Jackson concedes that three months' experience as a relief car foreman consti-

tuted the minimum qualification for promotion to permanent car foreman. The record demonstrates that Jackson began to perform relief car foreman work in April of 1977, continued working "off and on" in this capacity throughout 1977, and almost exclusively worked in this capacity throughout 1978 and 1979. We agree that the district court erred in concluding Jackson qualified for promotion as of April 1977. However, because the record shows that Jackson would have satisfied the three-month experience requirement in early 1978 and the district court only compensated Jackson's claim from June 1, 1979, when he clearly qualified for promotion, we believe this finding constitutes harmless error.

MOPAC also argues that the district court erroneously concluded that MOPAC pursued a "persistent practice" of filling permanent car foreman vacancies in the North Little Rock terminal with white employees. MOPAC notes that during the relevant time period, it promoted two black employees to permanent car foreman positions. From April of 1978 through February of 1982, MOPAC promoted a total of six other white and two black employees to the permanent car foreman position in the North Little Rock terminal. As such, MOPAC promoted whites seventy-five percent of the time. In sum, after reviewing the record, we cannot say the district court erred in concluding that Jackson made a prima facie case of discrimination as to his promotion and in finding that MOPAC's articulated reasons were ineffective to rebut the prima facie case.

MOPAC further contends the district court erred in finding that MOPAC "forced" Jackson to accept a promotion in Kansas City, after filling two North Little Rock vacancies with white employees two months earlier. Both of these employees transferred to North Little Rock to accept promotion. MOPAC asserts that it promoted these white employees ahead of Jackson based, in part, on a company preference for promoting employees away from their home base. Although the district court failed to specifically address the legitimacy

of MOPAC's nondiscriminatory reason, the record reveals that at the North Little Rock terminal, from May of 1978 through March of 1982, only three of the eight employees promoted to permanent car foreman transferred from another terminal. We believe these facts constitute sufficient evidence to support the district court's general conclusion that MOPAC gave only pretextual reasons for not promoting Jackson at the North Little Rock terminal.

Finally, MOPAC also asserts that the district court erred in finding that the white employees promoted to the permanent car foreman position at North Little Rock had less job seniority and/or supervisory experience than Jackson. Essentially, MOPAC contends that it based its promotional decisions on quality of performance. As such, in considering the amount of relief car foreman experience, the district court impermissibly substituted its judgment for that of the employer. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978). We disagree. Review of the record reveals that from April of 1978 through February of 1982, MOPAC promoted six white employees to permanent car foreman positions in North Little Rock.[2] During this time, Jackson qualified and applied for the permanent car foreman position. Proof of these facts constitutes a prima facie showing of discrimination under *McDonnell Douglas*. In observing that Jackson had more relief car foreman experience than the white employees promoted, we believe the district court merely buttressed its ultimate conclusion that MOPAC intentionally discriminated against Jackson by not promoting him to the North Little Rock terminal. *Davis v. Lambert*, 781 F.2d 658, 660 (8th Cir.1986).

■ In sum, after carefully reviewing the record we believe the district court properly concluded that Jackson made a prima facie case of discrimination as to his promotion, and demonstrated that MO-

PAC's articulated reasons for promoting white carmen over him were merely a pretext for discrimination.

## C. Relief Foreman Assignments

MOPAC asserts that the district court erred in concluding that MOPAC further discriminated against Jackson in assigning more desirable relief foreman positions to less experienced employees, and in denying Jackson any relief foreman assignments after April of 1981. Again, MOPAC argues that the trial court impermissibly substituted its judgment for that of the employer by characterizing Jackson as "more qualified", and concluding that the most experienced relief foreman should receive the most desirable relief foreman assignments. MOPAC further contends that a union representative, rather than a MOPAC official, scheduled the relief foreman work. Finally, MOPAC contends that in April of 1981, Jackson refused to accept future relief foreman assignments unless the scheduling was handled in an unbiased manner. As such, Jackson failed to make a prima facie case on this issue. We disagree.

■ Our review of the record reveals that MOPAC failed to refute Jackson's testimony that, at least in 1981, he consistently received less attractive (that is, third shift and weekends) relief foreman assignments. Instead, MOPAC offered testimony that it followed a neutral policy of offering available relief positions to the most senior relief foreman available to work. The record further demonstrates that although a union representative performed the actual scheduling, a MOPAC official designated the employees *eligible* for relief foreman assignments. Finally, Jackson denied that he ever refused to accept relief foreman assignments and testified that he specifically requested such assignments in July and November of 1981. As previously noted, on review we must give great deference to district court findings based on

2. MOPAC also promoted two black employees to the permanent car foreman position in North Little Rock during this time period.

As previously noted, one of these promotions resulted from the settlement of a lawsuit against MOPAC.

**406**

credibility determinations. *Anderson v. City of Bessemer City*, 105 S.Ct. at 1512. Once again, we believe the evidence supports the district court's conclusion that MOPAC discriminated against Jackson in the assignment of relief foreman positions.

### D. Discharge

MOPAC argues that the district court erred in rejecting as pretextual its reason for discharging Jackson (failure to properly inspect a train which later derailed). As previously noted, on review this court may only set aside factual findings of the district court if unsupported by substantial evidence or based upon an erroneous conception of the applicable law. *Kaiser Aluminum and Chemical Corp. v. Illinois Central Gulf Railroad*, 615 F.2d 470, 474 (8th Cir.1980). After careful consideration of the record on this issue, we are left "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. at 541–42. We are convinced that the district court erroneously concluded that Jackson proved his claim of discriminatory discharge. Under Fed.R. Civ.P. 52, we must set this ruling aside.

In reaching its conclusion, the district court stated:

> G. Even if the Court accepts as true the assertion that Jackson was derelict in his duties so as to result in the mechanical malfunction which led to the train derailment, it is plain that the action taken by defendant in discharging him is unparalleled in the recorded history of defendant's railroad derailments since January 1, 1979. Sixteen other derailments occurred from January 1, 1979, through August 30, 1982, due to mechanical malfunctions. Not one resulted in any disciplinary action taken against a white carman, let alone discharge of a white carman. * * *
> H. Although defendant asserts that Jackson's conduct justified his dismissal, this assertion must be rejected as pretextual in view of the uncontroverted evidence that no other instance of discipline

was ever imposed to [sic] a white carman in any of the other derailment incidents which resulted from a mechanical malfunction.

■ Although MOPAC disciplined no white carman in connection with these sixteen previous derailments, without more such evidence does not prove that MOPAC disciplined Jackson more severely than similarly situated white carmen. The evidence discloses the identity of only one carman, Nelson, who inspected one of the previously derailed trains. In the other fifteen incidents, the race of the employee responsible for inspection is unknown. Assuming white carmen inspected any of these fifteen trains prior to derailment, no evidence exists to show the previous discipline records of these carmen. It is uncontroverted that in December of 1981, MOPAC gave Jackson a thirty-day deferred suspension for failure to inspect and perform repairs on a train which subsequently derailed. Furthermore, the record shows that in July of 1979 a white carman, Nelson, received similar discipline (a thirty-day deferred suspension) for failure to service journal boxes on a train which later derailed. Prior to those deferred suspensions, both Jackson and Nelson had clean discipline records. This evidence indicates that MOPAC gave one similarly situated white carman the same discipline it gave Jackson for failure to inspect a train which later derailed. Without evidence that white carmen, with thirty-day deferred suspensions on their disciplinary record, inspected any of the fifteen other trains which derailed, the district court lacked sufficient evidence to conclude that MOPAC's articulated reason for Jackson's discharge was merely a pretext for discrimination. Accordingly, we must set aside the district court's conclusion that Jackson's discharge constituted racial discrimination.

■ MOPAC contends that the district court further erred in concluding that it discharged Jackson in retaliation for filing this lawsuit. To establish a prima facie case of retaliation, Jackson had to show: (1) that he engaged in a protected activity

(filing this lawsuit); (2) that adverse employment action occurred; and (3) a causal connection between the two. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). The burden of articulating a legitimate nondiscriminatory reason for discharge then shifted to MOPAC. *Id.* MOPAC carried this burden by showing that it discharged Jackson for his failure to properly inspect and service the journal boxes on the train which derailed. Jackson then had to prove that his engagement in the protected activity constituted a motivating factor in the discharge. *Id.* at 1296–97. This Jackson failed to prove.

It is undisputed that while investigating the cause of the August 1982 train derailment, general car inspector, Hollis, had no knowledge of Jackson's pending lawsuit. In fact, Hollis was unaware that Jackson had been responsible for servicing the train prior to derailment. Further, MOPAC introduced overwhelming evidence to justify the conclusion that Jackson's failure to properly service the journal boxes on this train caused the derailment. This evidence included: (1) the only oil in the remaining journal boxes appeared old and dirty, indicating that fresh oil had not been added at the previous service stop in North Little Rock; (2) the cars contained no "Q" marks to indicate that they had been serviced at the North Little Rock terminal; and (3) under the circumstances, failure to lubricate the journal boxes constituted the most likely cause of the derailment.

Aside from showing that his discharge occurred five months after he filed this lawsuit against MOPAC, Jackson offered no evidence that his protected activity constituted a motivating factor in the discharge decision. *Womack*, 619 F.2d at 1296–97. The record evidence and our previous determination that Jackson failed to rebut MOPAC's nondiscriminatory reason for discharge compel the conclusion that the district court also erred in finding that Jackson proved his discharge constituted intentional retaliation.

**E. Damages**

Finally, MOPAC submits that this court must reverse the district court's award of relief because (1) Jackson failed to prove the amount of his damages and (2) nothing in the record relates to the date (June 1, 1979) from which the district court found Jackson entitled to seniority, backpay and benefits for MOPAC's failure to promote him. As to the date from which Jackson should be compensated for his promotion claim, we note that the statute of limitations [3] entitles Jackson to relief from March 1, 1979. Accordingly, the district court should adjust its award of monetary relief for backpay and fringe benefits on this claim to reflect this date.

Because the district court retained jurisdiction of this case to enter further orders to effectuate relief, we reject MOPAC's claim that Jackson failed to prove his damages. Jackson proved his entitlement to backpay at the rate of a permanent car foreman (minus the wages paid by MOPAC) plus an amount equal to the value of fringe benefits which he would have received as a permanent car foreman from March 1, 1979, to the date of his termination. The district court merely required the parties to stipulate to the actual amount due Jackson on this claim. Because the amount due is easily defined and not speculative, it does not constitute a failure of proof.

Our reversal of the determination that MOPAC unlawfully fired Jackson will require modification of the backpay award. The district court awarded backpay covering the period following Jackson's discharge, based in part, on the unlawful discharge under Title VII. MOPAC's liability for backpay on the promotion issue will terminate on August 22, 1982, the date of Jackson's dismissal. However, MOPAC reinstated Jackson as a carman in June of 1983. The district court did not consider whether the prior discrimination against

3. Ark.Rev.Stat. § 37–206 provides a three-year statute of limitations for personal injury claims.

Jackson had a carry-over effect which prevented either his subsequent promotion to or his reinstatement as a permanent car foreman. Therefore, on remand, the district court may or may not award Jackson backpay for the period after June of 1983 (when MOPAC reinstated Jackson) as the record or a supplemental record may justify.

With or without the award of backpay for the period following Jackson's reinstatement, the district court may also reinstate its order requiring MOPAC to appoint Jackson to the next available permanent car foreman position in the North Little Rock terminal, and to backdate Jackson's seniority date.

## III. CONCLUSION

In sum, we affirm the district court's finding that MOPAC discriminated against Jackson in denying him his promotion to permanent car foreman at the North Little Rock terminal and in the assignment of relief car foreman work. We reverse the district court's finding that MOPAC discriminated and retaliated against Jackson in discharging him. Further, we modify the award of relief as stated in the preceding section of this opinion. Accordingly, we affirm in part and reverse and remand in part to the district court for further proceedings in light of this opinion.