978 F.2d 1087
 15 Employee Benefits Cas. 2816
 Douglas B. RATH, Plaintiff-Appellant,
v.
SELECTION RESEARCH, INC., a Nebraska Corporation; Donald O.
Clifton, Individually and as Chairman Administrator of the
Selection Research, Inc. Employee Stock Ownership Plan;
James R. Krieger; Connie Clifton Rath; Mick Zangari; SRI
Gallup, Inc.; SRI Gallup Selection & Development Inc.;
James K. Clifton, Defendants-Appellants.
 No. 91-2875.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 16, 1992.
Decided Nov. 6, 1992.
 
 Arch Y. Stokes, Atlanta, Ga., argued, for plaintiff-appellant.
 Roger P. Cox, Lincoln, Neb., argued (Neal E. Stenberg and Gregory D. Barton, on the brief), for defendants-appellants.
 Before RICHARD S. ARNOLD, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and LOKEN, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 This is a wrongful termination suit by Douglas B. Rath against his former employer, Selection Research, Inc. (SRI), and its managing officers and affiliated companies. Rath filed this action in federal court, attaching numerous state law causes of action to three alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. After substantial discovery, the district court[1] granted defendants summary judgment on the ERISA claims and then dismissed Rath's pendent state law claims. On appeal, Rath challenges only the dismissal of his claim that SRI violated ERISA by terminating him in retaliation for questioning proposed changes in SRI's employee stock ownership plan (ESOP) which Rath believed to be illegal. We affirm.
 
 I.
 
 2
 Rath joined SRI in 1972, after marrying defendant Connie Clifton Rath, the daughter of defendant Donald O. Clifton, SRI's largest stockholder, president, and chairman of the board. Rath's marriage to Clifton Rath, who is also an SRI Vice President and the Vice Chairperson of SRI's Board of Directors, ended in divorce in July 1984, after Rath engaged in an extramarital affair. In April 1986, Rath married another SRI employee. Although both continued working for SRI, Rath alleges that "Clifton's animosity toward Rath," which began during the final months of Rath's first marriage, "intensified." In July 1987, Clifton informed Rath that his performance was not satisfactory and he would have to give up his seat on the Board of Directors, forfeit future profit bonuses, control his temper, increase employee and supervisor involvement in his work, and focus on clients.
 
 
 3
 In 1987, Rath's salary, computed under a preexisting compensation formula, increased from $151,000 to $222,000. It increased to $247,000 in 1988, making Rath SRI's highest paid employee. Rath alleges that his "high level of compensation caused Clifton to bear further animosity toward me." Defendant James Krieger, SRI's Chief Financial Officer, testified that he thought Rath was over-compensated and advised Clifton to discharge Rath. On March 17, 1989, Clifton informed Rath he was terminated effective May 31, 1989, the day Rath commenced this action.
 
 
 4
 In support of his ERISA retaliation claim, Rath's Second Amended Complaint alleges that, in August 1988, Clifton informed SRI shareholders of planned changes in the method of distributing the ESOP's earnings that would adversely affect senior employees like Rath. Rath "questioned other shareholders, managers, and employees regarding the plausibility, ethics, and legality of [these] changes." In September 1988, Clifton told Rath: "I never want you talking to anyone about this further. You are stirring things up." At his deposition, Rath testified that he was told by Ben Simmons, an auditor for Touche Ross & Co., SRI's ESOP advisors, that the changes proposed by Clifton were illegal.[2]
 
 
 5
 Clifton acknowledged at his deposition that he fully intended to implement his ESOP proposal until "Touche Ross said it wasn't appropriate" several months after August 1988. However, in an affidavit submitted in support of defendants' motion for summary judgment, Clifton specifically denied that the termination was in retaliation for Rath's questioning of the proposed ESOP changes. Clifton averred that Rath was terminated because of "poor work performance, including, but not limited to, [Rath's] inability to work supportively and provide company-wide leadership." In opposing the motion for summary judgment, Rath submitted no additional factual support for his ERISA retaliation claim.
 
 
 6
 The district court granted defendants summary judgment on Rath's retaliation claim, holding that it is "unsupported by the evidence."[3] On appeal, Rath argues that, under § 510 of ERISA,[4] a retaliation claim should lie whenever an employer discriminates against an employee for opposing any practice unlawful under ERISA, and that disputed issues of material fact make summary disposition of his retaliation claim improper. We agree with the district court that the evidence in support of Rath's retaliation claim was insufficient to defeat summary judgment. Therefore, we do not consider the question whether Rath's informal opposition to an allegedly illegal plan change is protected activity under § 510, which is apparently a question of first impression.
 
 II.
 
 7
 Rath alleges that SRI fired him because he complained that Clifton's proposed ESOP changes were illegal. ERISA discrimination claims are analyzed under the three-stage framework used in Title VII and ADEA cases. See Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir.1988). If plaintiff makes out a prima facie case of retaliation, the employer must articulate a legitimate, nondiscriminatory reason for its actions. If the employer meets that burden, plaintiff must prove that the proffered reason is pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
 
 
 8
 As in other retaliation contexts, to make out a prima facie case of ERISA retaliation, Rath must prove that he participated in a statutorily protected activity--which we are assuming for purposes of this appeal; that an adverse employment action was taken against him--which is obvious from the fact of discharge; and that a causal connection existed between the two. See, e.g. Jackson v. Missouri Pacific R.R., 803 F.2d 401, 406-07 (8th Cir.1986). The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive. See Couty v. Dole, 886 F.2d 147, 148 (8th Cir.1989); Kimbro v. Atlantic Richfield Co., 889 F.2d 869 at 881 (9th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990).
 
 
 9
 Here, Rath's only evidence of causal connection is that his notice of termination came six months after Clifton reprimanded Rath for complaining about the proposed ESOP changes. Therefore, we doubt that Rath has established a prima facie case of retaliation. See Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir.1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation"). However, Rath's failure of proof is even more obvious if we focus upon the third or pretext stage of the McDonnell Douglas inquiry.
 
 
 10
 In support of their motion for summary judgment, defendants submitted an affidavit by Clifton asserting a legitimate, non-discriminatory reason for Rath's discharge--poor work performance. In response to that motion, Rath submitted no additional factual evidence tending to establish a causal relationship between the discharge and his prior opposition to the proposed ESOP changes. Given defendants' affirmative showing, the district court was clearly correct in concluding that Rath had presented insufficient evidence of retaliatory discrimination to avoid summary judgment. See Valdez v. Mercy Hosp., 961 F.2d 1401, 1403 (8th Cir.1992) (causal connection not proved when discharge for unsatisfactory job performance "follows within six months the employee's filing of a civil rights complaint"); Jackson, 803 F.2d at 407 (five-month time span between the protected activity and termination did not rebut employer's performance-related evidence). See also Miller v. CertainTeed Corp., 971 F.2d 167 (8th Cir.1992).
 
 
 11
 On appeal Rath argues that defendants "failed adequately to articulate a legitimate, nondiscriminatory reason for Mr. Rath's discharge" because they submitted only Clifton's conclusory affidavit that he terminated Rath for poor work performance. We disagree. The record contains independent support for Clifton's affidavit, such as the fact that Rath's performance was criticized a full year before the ESOP changes were proposed, and the numerous allegations in Rath's own complaint chronicling the deterioration of his relationships with Clifton and others in SRI's management. Because Clifton had sole authority to discharge Rath, his affidavit articulating a nondiscriminatory reason was sufficient to meet SRI's McDonnell Douglas burden for summary judgment purposes.
 
 
 12
 Rath failed to discredit SRI's sufficient factual allegations of poor performance. Rath's oft-repeated references to his high levels of compensation and sales did not address whether he could work effectively with others, and therefore failed to rebut Clifton's assertion that Rath suffered from an "inability to work supportively and provide company-wide leadership." In resisting summary judgment on the retaliation issue, Rath essentially relied on the allegations in his complaint, which is plainly inadequate. See Fed.R.Civ.P. 56(e).
 
 
 13
 Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A plaintiff facing a summary judgment motion cannot "get to a jury without any significant probative evidence tending to support the complaint." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmovant must make a sufficient showing on every essential element of its case on which it bears the burden of proof. See Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 618 (8th Cir.1988). Having carefully reviewed the district court's decision de novo under this standard, see, e.g., Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir.1992), we conclude that it properly granted summary judgment on Rath's ERISA retaliation claim.
 
 
 14
 The judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The HONORABLE LYLE E. STROM, Chief United States District Judge for the District of Nebraska
 
 
 [2]
 There is no evidence in the record as to the nature of the illegality
 
 
 [3]
 In dismissing Rath's other claims, the district court also held (i) that Rath produced no competent evidence that he was discharged for the purpose of denying him ERISA benefits, (ii) that Rath had no evidence to support his conclusory allegations that defendants had violated ERISA in merging SRI's ESOP with other plans, and (iii) that Rath's pendent state law claims should therefore be dismissed. Rath has not challenged any of these rulings on appeal
 
 
 [4]
 Section 510, 29 U.S.C. § 1140, provides in part:
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter.... It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter....