**UNITED STATES of America, Plaintiff,**

v.

**Kenneth J. FATTMANN, Jr., M.D., Defendant.**

**No. 94–3364–CV–S–4.**

United States District Court, W.D. Missouri, Southern Division.

Oct. 5, 1995.

Edward H. Funston, Assistant U.S. Attorney, Kansas City, Missouri, for plaintiff.

Dewey L. Crepeau, Columbia, MO, for defendant.

## ORDER

RUSSELL G. CLARK, Senior District Judge.

This matter comes before the Court on cross-motions for summary judgment. Plaintiff's motion for summary judgment will be granted while Defendant's motion for summary judgment will be denied for the reasons set forth below.

■ There are well settled principles in ruling on a motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact present in the case and judgment should be awarded to the party seeking the motion as a matter of law. *Langley v. Allstate Insurance Co.*, 995 F.2d 841, 844 (8th Cir.1993). Because the summary judgment remedy is drastic, it should not be granted unless the moving party has established the right to a judgment with such clarity that there is no room for controversy. *Umpleby v. United States*, 806 F.2d 812, 814 (1986). However, as the Supreme Court noted in *Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986): "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole."

■ In order for a motion for summary judgment to be defeated, the nonmoving party must resist the motion by making a sufficient showing on every element of its case on which it bears the burden of proof, *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir.1992), and the factual dispute "must be outcome determinative under prevailing law." *Get Away Club v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992). In *Celotex Corp.*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, the Court held that summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." However, such a motion is to be viewed in the light most favorable to the opposing party who also must receive the benefit of all reasonable inferences to be drawn from the underlying facts. *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1245 (8th Cir.1991).

■ The standard for granting a motion for summary judgment is similar to that of a directed verdict: the evidence must be such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–2512, 91 L.Ed.2d 202 (1986); *Westchem Agr. Chemicals, Inc. v. Ford Motor Co.*, 990 F.2d 426 (8th Cir.1993), *reh. denied*, May 6, 1993. Summary procedures are appropriate where the issues for resolution are primarily legal rather than factual. *Id.* at 1092. Issues of fact must be material to a resolution of the dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgment is appropriate. *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992). In ruling on a motion for summary judgment, the Court does not decide material fact issues, rather it determines whether or not they exist. *Parmenter v. Federal Deposit Ins. Corp.*, 925 F.2d 1088, 1092 (8th Cir.1991).

With these standards in mind, the Court will proceed to consider Plaintiff's motion for summary judgment.

There are no disputed issues of fact. Consequently, this case is ripe for summary judgment. The United States Public Health Service ("PHS") is one of the seven Uniformed Services which includes the United States Armed Services. The PHS provides health professionals who carry out programs providing health services. Congress established the Uniformed Services University of the Health Sciences ("USUHS") to meet the educational needs of physicians. In May, 1983, Defendant signed a form accepting placement in the USUHS School of Medicine. Among other things, paragraph 4(a) of the form stated:

> If I successfully complete the M.D. program, I will be obligated to serve on active duty as a medical officer for not less than 7 years exclusive of internship, residency

training, graduate medical education, or any other service obligation carried into the program unless specifically exempted by law or service policy.

Defendant Fattmann was called to active duty in the Navy and assigned to the USUHS on June 29, 1983. In August, 1985, Defendant was transferred from the Navy to the PHS but still remained at the USUHS. On August 26, 1985, Defendant signed a Training Agreement for PHS commissioned Officers assigned to the USUHS School of Medicine. Item G on page 3 of the document states:

> If I fail to complete an active-duty obligation with the PHS Commissioned Corps incurred pursuant to my assignment as a medical student to USUHS or my participation in PHS-supported extramural graduate medical education as specified in Paragraphs B and F, above, I shall be obligated to pay PHS an amount equal to two (2) times the total amount of tuition, fees, and other training expenses and two (2) times any compensation (to include but not be limited to pay, allowances, special pays, travel, transportation, and shipment of household goods) received by me or paid on my behalf in connection with the training received after July 21, 1980. . . .

On October 31, 1986, while still in medical school at USUHS, Defendant signed an application form transferring him to the Karl Menninger School of Psychiatry. Pursuant to 41 U.S.C. § 218a, item 17b of the application states, "I understand that if I fail to complete an active duty obligation with the PHS Commissioned Corps incurred as a result of my extramural training [at the Menninger School], I shall be obligated to PHS an amount equal to two (2) times the total amount of the tuition, fees and other [expenses] received by or paid to me in connection with the training."

On May 16, 1987, Defendant Fattmann graduated from USUHS as a medical doctor. He then received a personnel order stating that a "[s]even year active-duty obligation for USUHS training will commence in PHS following completion of a PHS approved internship and/or residency training. An active-duty obligation equal to two times the period

of PHS-supported extramural training will commence immediately upon completion of active-duty obligation incurred pursuant training at USUHS." Eventually Defendant was allowed to transfer to the Bureau of Prisons to fulfill his Active Duty Obligation. Upon return from training, Defendant was assigned to the Medical Center for Federal Prisoners, Springfield, Missouri.

On July 14, 1992, Defendant wrote to the Director, Division of Commissioned Personnel, expressing his dissatisfaction with his assignment with the Federal Bureau of Prisons and indicating if he was unsuccessful in negotiating another assignment, he would be forced to default on his obligation to the United States. On August 14, 1992, Defendant submitted a form requesting separation effective August 18, 1992. In effect, Defendant resigned from his active service. Defendant's indebtedness became due upon his separation from the PHS.

It has been stipulated that Defendant's indebtedness regarding the appropriate tuition equivalent and for living expenses amounts to $58,693.00. Further, the parties also agree that the basic pay, subsistence allowance, quarters allowance, housing allowance, variable special pay, uniform allowances, etc. paid to Defendant by the United States between 1983 and 1988 totals $105,008.69 for a subtotal amount of $163,701.69. Plaintiff also claims shipping and travel fees of $9,167.64 and a National Board for Medical Examiner's Fee of $250.00 subtotaling $9,417.64 pursuant to both the statute, *infra,* and Defendant's signed agreement with the Plaintiff. Combining the two subtotals amounts to a total of $173,119.33. Doubling this amount per the statute, as discussed below, equals $346,238.66. Moreover, Plaintiff claims and Defendant admits to owing an additional $10,321.24 from a special pay contract. As of this date, the incurred late charges amount to $152,293.30. The late charges were calculated based upon the principal of $346,238.66 plus accrued interest at the rate of 14% per annum amounting to a daily amount of $136.76. In total, as of this date, Defendant will owe $508,853.20.

█ The only legal issue to be resolved is whether Defendant Fattmann owes twice the

$173,119.33 amount per 42 U.S.C. § 218a(a) and (b) and his agreements with the Plaintiff as stated above. 42 U.S.C. § 218a(a) and (b) provide:

(a) Appropriations available for the pay and allowances of commissioned officers of the Service shall also be available for the pay and allowances of any such officer on active duty while attending any Federal or non-Federal educational institution or training program and, subject to regulations of the President and to the limitation prescribed in such appropriations, for payment of his tuition, fees, and other necessary expenses incident to such attendance.

(b) Any officer whose tuition, fees, and other necessary expenses are paid pursuant to subsection (a) of this section while attending an educational institution or training program for a period in excess of thirty days shall be obligated to pay to the Service an amount equal to **two times the total amount** of such tuition, fees, and other necessary expenses received by such officer during such period, and **two times the total amount** of any compensation received by, and any allowance paid to, such officer during such period, **if after return to active service such officer voluntarily leaves the Service within (1) six months, or (2) twice the period of such attendance, whichever is greater.** Such subsequent period of service shall commence upon the cessation of such attendance and of any further continuous period of training duty for which no tuition and fees are paid by the Service and which is part of the officer's prescribed formal training program.... (Emphasis added).

Defendant does not dispute that he has a monetary obligation to the Plaintiff. However, as stated above, he does not believe that the statute, whereby it doubles the amount owed, applies to him. Moreover, Defendant contends that 42 U.S.C. § 218a(b) is a punitive statute and accordingly should be strictly construed.

Defendant asserts that "[t]he statute only allows doubling in a scenario where, '... if **after return** (emphasis added) to active service such officer voluntarily leaves the service ...'" Defendant contends that he never

actually left active service to attend USUHS. Therefore, the statute only applies to one who actually leaves the military to attend an educational institution or training program and then returns to "active service," and subsequently leaves the service prior to fulfilling his obligation. Basically, Defendant claims the statute is inapplicable to him in that he never left "active service" as defined in the statute when he received his medical education and training. Therefore there is no way he could also "... return to active service ..." to once again leave "active service" because he never left in the first place.

The Court finds this argument wholly without merit. Defendant is trying to engage in a game of semantics. As the Court interprets the applicable statutes and regulations, the term "active service" as used in 42 U.S.C. § 218a is the equivalent of an "active duty obligation" as used in the affidavit attachments of Capt. Denise Canton of the PHS. Basically, both active service and active duty obligation connote when a person has completed their education and training and "starts to work" in repaying their obligation to the United States. In the instant case, Defendant began his active service and active duty obligation when he began working at the Medical Center for Federal Prisoners, Springfield, Missouri. Obviously, he left active service and his active duty obligation when he, in effect, quit on August 18, 1992.

As stated above, "active service" and "active duty obligation," for present purposes are synonymous. The term "active duty" is a term separate from the prior two. The Court interprets "active duty" to mean when a person begins to serve in one of the Uniformed Services. The Court believes that when Defendant was called to active duty in the Navy on June 29, 1983 (and subsequently transferred to the PHS), he was in "active duty" status from that point until he stopped working for the Medical Center in August, 1992. The fact that he received medical education and training and then subsequently began his "active service" or "active duty obligation" at the Medical Center does not affect his "active duty" status. The Plaintiff explains the interaction of the terms as fol-

lows: "... while all *active service* time is 'active duty', not all time on active duty is time in active service."

The Court finds that while Defendant Fattmann was attending USUHS he was on active duty but was not in active service. Therefore he did in fact return to active service and then subsequently left active service thereby violating the statute and consequently incurring the doubling of costs as provided in 42 U.S.C. § 218a(b). Accordingly, it is

ORDERED Defendant's motion for summary judgment is denied; and it is further

ORDERED Plaintiff's motion for summary judgment is granted and the Clerk is directed to enter judgment in favor of plaintiff and against defendant in the total amount of $508,853.20.