Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued July 20,
2006

 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00937-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



ROBERT GREEN, Appellant

 

V.

 

LOWE’S HOME CENTERS, INC., Appellee

 

 



On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 2004-39312

 








 

 



O P I N I O N

          Lowe’s
Home Centers, Inc. terminated Robert Green on the basis that he harassed
several coworkers in violation of its sexual harassment policy.  Green sued Lowe’s, contending that it had, in
fact, fired him in retaliation for his filing of a workers’ compensation
claim.  The trial court granted summary judgment
in favor of Lowe’s.  Green appeals,
contending fact issues exist as to (1) whether he has established a prima facie
case of retaliation by showing a causal link between his termination and his
workers’ compensation claim, (2) whether Lowe’s purported reason for
terminating Green—that he committed sexual harassment in the workplace—was a
pretext for a retaliatory purpose, and (3) whether Green is entitled to
punitive damages.  We agree with the
trial court that Green has failed to raise a fact issue as to the causal link
between his termination and workers’ compensation claim and therefore affirm.

Background

          In
February 1999, Lowe’s hired Green to work as a sales specialist in the
appliance department of its Willowbrook, Houston location.  Green sold appliances, retrieved them from
the storage area, and moved them from one area of the store to another.  Green ranked as a top salesman.  In June 2003, a refrigerator fell on Green,
severely injuring his hand.  Tom Moten,
the store manager, gave Green a Lowe’s credit card for use at a hospital emergency
room.  Shortly thereafter, Lowe’s filed a
workers’ compensation claim on Green’s behalf and granted Green a paid medical
leave.  Green received workers’
compensation benefits throughout his leave.

          Green’s
physician released him to return to work near the end of August, with some
physical work restrictions, including no pushing, pulling, lifting, climbing,
grasping, or operating heavy machinery. 
Green returned to his sales specialist position on September 8.  Lowe’s offered Green a light-duty position as
a door greeter, a job that paid 37% less than the sales specialist position,
but one that conformed to all of Green’s physical work restrictions.  Green testified in his deposition that Mary
Latona, the store’s human resources manager, offered him a choice between
remaining a sales specialist at his pre-injury pay, performing only the sales
and computer input portions of the job while another employee performed the
physical aspects of the job, or taking the light-duty position of door
greeter.  Latona advised Green that it
would probably be best for him to remain a sales specialist.  Green chose to do so, and Lowe’s hired
another person to perform the physical component of Green’s job.

          On
October 20, Lowe’s received an anonymous call on its Alertline—a phone number
Lowe’s encourages its employees to call to report workplace harassment—alleging
that Green had sexually harassed several female employees.  Specifically, the caller alleged that Green
would discuss the size of his penis at work and offer female employees money
for sex, making them uncomfortable; he would massage female employees on the
shoulders, hug them, and touch them in inappropriate ways; and he would comment
on the size of female employees’ breasts. 
The caller alleged that other employees may not have felt comfortable
reporting Green’s behavior because management favored Green.

          Based
on the call, Latona investigated Green’s alleged improper behavior.  She obtained statements from Green and four
women who regularly worked with him. 
Amber Zook stated that Green made sexual comments to female employees;
hugged Zook in the break room, despite her resistance, which caused her to
avoid Green; made comments about having sex with her; and detailed to her how
he would perform oral sex on women. 
Karie Neiser stated that Green kissed her on two occasions, gave her a
massage, gave her one or two hugs, and invited her for drinks and dinner.  Neiser also stated that Green had never
actually accompanied her anywhere outside of work, had never made sexual
comments to other employees in her presence, but only had offered to drive her home
because she did not have a car.  Alhere
Gajere stated that Green hugged her very tight so he could feel her chest, made
sexual remarks about the size of his penis, made comments to her about the size
of women’s breasts, and stated that he was a “pimp” and would pay women to
sleep with him.  Gajere also stated that
she had heard other employees talk about Green’s touching them, and that many
employees did not talk to Green because he made them uncomfortable.  Melissa Chavis stated that she had not seen
Green touch, kiss, or hug anyone at Lowe’s, that Green was a very nice person, and
that Green had not offered anyone money for sex in her presence, but that she
had heard Green make sexual comments that were out of line.

          Green
gave two statements in which he denied the allegations of improper behavior
made against him.  Green admitted that he
had hugged Neiser, but claimed it was consensual.  He stated that it was his word against the
women’s, and he had no additional evidence to controvert his accusers.  Based on Latona’s investigation, Lowe’s
terminated Green on November 3, 2003. 
Lowe’s informed Green that the reason for his termination was violation
of its sexual harassment policy.  Green
subsequently filed this lawsuit, alleging that Lowe’s terminated him because he
had filed a workers’ compensation claim, and that it used the sexual harassment
charges as a pretext for its wrongful conduct.

Standard of Review

We review the trial court’s ruling on
a summary judgment motion de novo.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  We view the evidence in a light
most favorable to the non-movant, making all reasonable inferences and
resolving all doubts in the non-movant’s favor. 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).  Because the summary judgment order does not
specify the ground or grounds on which the trial court relied for its ruling,
we affirm it if any of the
summary judgment grounds is meritorious. 
FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000).

          Here,
Lowe’s sought both a traditional and a no-evidence summary judgment.  The movant for a traditional summary judgment
has the burden to show that no genuine issue of material fact exists and thus he
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  Once the movant shows he is entitled to
judgment as a matter of law, the burden shifts to the non-movant to present
evidence raising a fact issue to defeat the motion for summary judgment.  Haight v. Savoy Apartments, 814 S.W.2d
849, 851 (Tex. App.—Houston [1st Dist.] 1991, writ denied).   

          In
a no-evidence summary judgment, the movant represents that no evidence exists
as to one or more essential elements of the non-movant’s claims, upon which the
non-movant would have the burden of proof at trial.  Tex.
R. Civ. P. 166a(i); Jackson v.
Fiesta Mart, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).   On
review, we ascertain whether the non-movant produced more than a scintilla of
probative evidence to raise a genuine issue of material fact.  Id.  More than a scintilla of evidence exists if
the evidence “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  If the evidence does no more than create a
mere surmise or suspicion of fact, less than a scintilla of evidence
exists.  Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711–12 (Tex. 1997). 
Although the non-moving party is not required to marshal its proof, it
must present evidence that raises a genuine fact issue on each of the
challenged elements. Tex. R. Civ. P.
166a(i).  The fact that a movant attaches
evidence to a motion for summary judgment on both traditional and no-evidence
grounds does not foreclose it from asserting that there is, in fact, no evidence with regard to a
particular element.  Binur v. Jacobo,
135 S.W.3d 646, 651 (Tex. 2004).  Rather,
any attached evidence should be examined to determine whether it creates a fact
question.  Id.

Discussion

          Green
contends that the trial court improperly granted summary judgment because fact
issues remain as to (1) whether he has established the causal link between his
termination and his workers’ compensation claim necessary to establish his
prima facie case of discrimination, (2) whether he rebutted Lowe’s legitimate,
non-discriminatory explanation of sexual harassment by demonstrating that his
termination was retaliatory in nature, and (3) whether Lowe’s acted with malice,
thus entitling him to punitive damages.  

          Section 451.001 of the Texas Labor Code prohibits an
employer from discharging an employee for filing a workers’ compensation claim
in good faith. Tex. Lab. Code Ann.
§ 451.001 (Vernon 2006).  The employee
has the initial burden of demonstrating a causal link between the discharge and
the filing of a workers’ compensation claim.  Benners v. Blanks Color Imaging, Inc.,
133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.).  The employee need not show he was fired solely
because of filing the workers’ compensation claim.  Lee v. Haynes & Boone, L.L.P., 129 S.W.3d
192, 196 (Tex. App.—Dallas 2004, pet. denied).   Rather, he must show that, “but for” the
filing of the claim, the discharge would not have occurred when it did.  Haggar Clothing Co. v. Hernandez, 164
S.W.3d 386, 386 (Tex. 2005).  

Once the employee establishes a
causal link, the employer bears the burden to rebut the alleged improper
termination by showing that a legitimate reason exists for termination.  See Cont’l Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450–51 & n.3 (Tex. 1996).  Thereafter, in order to survive a motion for
summary judgment, the burden shifts back to the employee to produce
controverting evidence raising a fact issue as to a retaliatory motive.  McIntyre v. Lockheed Corp., 970
S.W.2d 695, 697 (Tex. App.—Fort Worth 1998, no pet.).

          An
employee may establish a link between termination and the filing of a workers’
compensation claim through circumstantial evidence or through reasonable
inferences from the evidence.  Cazarez,
937 S.W.2d at 451; Lee, 129 S.W.3d at 196.  Circumstantial evidence sufficient to
establish a causal link between termination and filing a workers’ compensation
claim may include (1) knowledge of the compensation claim by those making the termination
decision; (2) an expression of a negative attitude toward the employee’s
injured condition; (3) a failure to adhere to established company policies; (4)
discriminatory treatment in comparison to similarly situated employees; and (5)
evidence that the stated reason for the discharge was false.  Cazarez, 937 S.W.2d at 451.  In addition, temporal proximity between the
assertion of a protected right and termination may be evidence of a causal
connection.  Fields v. Teamsters Local
Union No. 988, 23 S.W.3d 517, 529 (Tex. App.—Houston [1st Dist.] 2000, pet.
denied).  Here, Green contends fact issues
remain as to each of these issues.  We
address each in turn.

 

Knowledge of the Workers’ Compensation
Claim

          It
is undisputed that Lowe’s knew about Green’s workers’ compensation claim.  In fact, Lowe’s records indicate that Lowe’s
filed Green’s workers’ compensation claim on his behalf.  In addition, the manager on duty when Green
was injured gave Green a Lowe’s credit card to pay for his immediate medical
treatment, and Lowe’s granted Green a paid medical leave of absence while he
recovered from his injury.  However, knowledge
of a workers’ compensation claim alone does not establish a causal link between the alleged discriminatory behavior and the
filing of a claim sufficient to defeat summary
judgment; rather, it is one factor to be considered in light of the record as a
whole.  See Courtney v. Nibco, Inc.,
152 S.W.3d 640, 644 (Tex. App.—Tyler 2004, no pet.); Lone Star Steel Co. v.
Hatten, 104 S.W.3d 323, 327–28 (Tex. App.—Texarkana 2003, no pet.).  Here, we examine whether Green raises a fact
issue indicating that Lowe’s knowledge of Green’s workers’ compensation claim
led to his discharge in light of the remaining record.

Negative Attitude Toward Green’s
Injury

Green contends that he raises a fact
issue with evidence that Lowe’s expressed a negative attitude toward his injury
because Latona asked him, upon his return to work, to consider a light-duty position
as a door greeter at a 37% reduction in pay. 


As Lowe’s points out, Texas law
permits “[a]n employer [to] offer an employee a modified duty position which
has restricted duties which are within the employee’s work abilities as
determined by the employee’s treating doctor.” 
28 Tex. Admin. Code § 129.6(b)
(2006).   In addition, a reduction in pay
following a work related injury does not necessarily demonstrate a negative
attitude toward the injury if the employee cannot assume his pre-injury
responsibilities.  See Garcia
v. Levi Strauss & Co., 85 S.W.3d 362, 368–69 (Tex. App.—El Paso 2002,
no pet.).  Here, the physical work
restrictions Green’s doctor imposed prevented Green from lifting, pushing, or
pulling appliances, and upon his return to work his arm remained in a
splint.  Lowe’s nonetheless allowed Green
to return to his former position with no pay reduction, only requiring that
Green perform the customer service and computer input aspects of the job, while
hiring another individual to perform the physical aspects of the job.  Green admits that Latona ultimately told him
that the best thing for him would be to remain in the sales specialist position
performing computer duties.  Green also
admitted that Lowe’s never asked him to perform any tasks after returning to
work that violated the physical restrictions his doctor had imposed.  Viewed in a light most favorable to Green, Lowe’s
offer of a lighter duty, lower paying position, in light of the actual accommodations
it made to Green after he returned from his injury, does not create a fact
issue regarding whether it expressed a negative attitude toward his injury.  

          Adherence
to Company Policy

          Green contends Lowe’s failed to adhere
to its own policies when conducting the sexual harassment investigation against
him.  Specifically, Green contends that
(1) Green’s alleged behavior did not satisfy Lowe’s definition of sexual harassment,
given that his accusers did not indicate that his behavior was unwelcome, and
(2) his accusers failed to immediately report the alleged harassment as required
by Lowe’s sexual harassment policy, thus creating an obligation that Lowe’s
investigate those employees.  

          Lowe’s
human resources guide defines sexual harassment as “unwelcome sexual advances,
requests for sexual favors, or other verbal or physical conduct of a sexual
nature.”  Lowe’s orientation guide states
that Lowe’s has a “zero tolerance for harassment of any kind in the work
environment.”  The anonymous Alertline
tip alleged that Green made “inappropriate” comments about the size of his
penis, talked about having sex with female employees, hugged and massaged
female employees, and offered female employees money for sex.  The fact that an employee called the
Alertline to report Green’s behavior, alleging specifically that Green made
“inappropriate comments” that “make[] employees uncomfortable” is some
indication that his behavior was unwelcome. 
Latona confirmed these allegations through signed, written statements
made by several of Green’s coworkers.  For
example, Zook stated that she pushed Green away when he hugged her in the break
room and thereafter she avoided him, but he continued to make specific,
suggestive sexual comments to her.  Gajere stated that Green hugged her to feel
her chest, commented on the size of her breasts, and that he is “a person you
don’t feel comfortable around or to even trust.”  Chavis stated that Green made sexual comments
that were “out of line.”  These
statements are some evidence from which Lowe’s could conclude that Green’s
behavior was unwelcome and in violation of company policy.  Moreover, Green admitted that he was aware of
Lowe’s zero tolerance for harassment policy, and that he did not have any
evidence to support his contention that his behavior toward his coworkers was
welcome other than his own statement to that effect.  Moten testified in his deposition that he
believed Green lied in his interview with Latona when he denied the sexual
harassment allegations against him.  In
its investigation, Lowe’s was entitled to disbelieve Green’s statement that his
behavior was welcome.  We conclude that Green
has failed to raise a fact issue concerning whether Lowe’s stated reason for
terminating Green was false.

          Green
next contends Lowe’s failed to adhere to company policy by failing to
investigate the delay in reporting his conduct to management by his female
accusers.  Lowe’s management guide states
that: 

A. All employees must help to maintain a work
environment free from harassment or discrimination.  This includes refraining from engaging in
harassing or discriminatory conduct, as well as an obligation to make
management aware if such conduct is occurring in the work environment.

 

B. All managers are charged with the responsibility of
assuring a work environment free from harassment.  This includes being aware of activity within
their area of responsibility and taking immediate and appropriate corrective
action to stop and prevent harassment in any form.

 

. . . 

 

D. Managers willfully failing to act on known
harassment or discriminatory activity within their area of responsibility are
subject to disciplinary action up to and including termination.

 

. . . 

 

E. (REV) Confidentiality- All reports and
investigations of harassment will be treated confidentially to every extent
possible.  All harassment and
discrimination complaints will be promptly investigated, and if it is
determined that inappropriate conduct has occurred, appropriate disciplinary
action will be taken against the offending party, up to and including
discharge.

 

F. (REV) False Representation- Employees found
to have knowingly made a false representation in making a complaint or giving a
statement during a Company investigation of a complaint of harassment and/ or
discrimination will be subject to discipline. 
Such discipline may include termination.

 

G (REV) Retaliation against any person, who has
complained about harassment or discrimination, filed a charge of harassment or
discrimination, or who has otherwise participated in an investigation of such a
complaint will not be tolerated. 
Such activity is unlawful and will result in severe discipline, up to
and including discharge.

 

Green provides no evidence that
Lowe’s failed to adhere to its policies by failing to investigate his accusers.  Lowe’s new employee orientation guide
encourages employees to report sexual harassment, and provides procedures for
using its “open door policy,” but it does not provide procedures for handling
an employee’s failure to report sexual harassment.  The guide neither states that an employee who
fails to report sexual harassment will be investigated, nor that a failure to
report sexual harassment is grounds for termination.  

          In
addition, Green presents no evidence to raise a fact issue concerning whether
Lowe’s failed to adhere to company policy in its handling of his sexual
harassment investigation.  Green presents
no evidence suggesting that sexual harassment investigations have been handled
differently in cases in which the accused had not previously filed a workers’
compensation claim, nor does he present evidence that Lowe’s typically
investigates accusing employees who failed to immediately report sexual
harassment.  Cf. Tex. Dep’t of
Assistive & Rehabilitative Servs v. Howard, 182 S.W.3d 393,
405–06 (Tex. App.—Austin 2005, no pet.) (finding legally and factually
sufficient evidence of discrimination where witness testified that more serious
violations than those perpetrated by plaintiff/employee were tolerated, and
plaintiff/employee was only person ever disciplined for such behavior).  Green presents no evidence that other
employees found to have been engaged in sexual harassment after an
investigation continued working at Lowe’s despite the findings of the
investigation.  Green presents no
evidence to contradict Latona’s conclusion that Green’s behavior satisfies
Lowe’s broad definition of sexual harassment. 
The accusations against Green came from more than one employee,
indicated that harassing behavior had occurred on repeated occasions, and fell
within Lowe’s definition of harassment. 
We conclude that Green fails to raise a fact issue as to whether Lowe’s
failed to adhere to company policy in conducting his sexual harassment investigation.

Less Favorable Treatment than
Similarly Situated Employees

Green next contends he was treated
less favorably than similarly situated employees because his accusers were not
investigated for their failure to immediately report any alleged sexual harassment.  Green’s accusers, however, are not employees who
are similarly situated to him; rather, it is other employees who were accused
of sexual harassment who are similarly situated.  Green presents no evidence of how Lowe’s
treated other employees whom it investigated for harassment.  Concomitantly, Green presents no evidence
that Lowe’s typically investigates accusers of harassment in the same manner as
the accused, and its company policy does not so provide.  In short, we conclude Green has failed to
raise a fact issue concerning whether Lowe’s treated Green differently than
similarly situated employees in implementing its company policies.

Stated Reason for Discharge Was False

Green contends a fact issue remains
concerning whether Lowe’s stated reason for discharging him was false.  Specifically, Green reiterates his arguments
that his behavior did not satisfy Lowe’s definition of sexual harassment
because it was not unwelcome, and that Lowe’s violated company policy by
failing to investigate his accusers.  In
support of these arguments, Green notes that the alleged sexual harassment
occurred between six and eleven months prior to his termination, and presents his
statement that he did not commit the acts alleged against him by his accusers.  Green presents no evidence of Lowe’s awareness
of any complaint of harassment before the Alertline call; nor does the summary
judgment record reveal the dates of the alleged harassment.  Green has failed to present a scintilla of
evidence to demonstrate that Lowe’s purported reason for terminating him was
false, and Green’s subjective belief regarding the reason for his discharge is insufficient
to raise a fact issue.  See Lee,
129 S.W.3d at 197 (citing Tex. Division-Tranter, Inc. v. Carrozza, 876
S.W.2d 312, 313–14 (Tex. 1994) (per curiam) (appellant’s subjective beliefs are
no more than conclusions and are therefore not competent summary judgment
evidence)). 

Temporal Proximity

Finally, Green contends the temporal
proximity between his return to work from his work-related injury and his
termination is sufficient to create a fact issue concerning whether there is a
causal link between his termination and his workers’ compensation claim.  The cases Green cites in support of his
contention that temporal proximity may establish a causal link refer to the
relevant time period as the time between the protected activity—in this case
the filing of the workers’ compensation claim—and the termination.  See Rath v. Selection Research, Inc.,
978 F.2d 1087, 1090 (8th Cir. 1992); Munoz v. H&M Wholesale, Inc.,
926 F. Supp. 596, 610 (S.D. Tex. 1996); Fields, 23 S.W.3d at 529; Worsham
Steel Co. v. Arias, 831 S.W.2d 81, 84 (Tex. App.—El Paso 1992, no writ); Chem.
Express Carriers v. Pina, 819 S.W.2d 585, 590 (Tex. App.—El Paso 1991, writ
denied).  In Fields, we rejected a
union’s argument that temporal proximity could never provide evidence of causal
connection, stating that “proximity may establish a causal connection between
[the] complaint and the adverse employment action when, as here, they are
separated by weeks, as opposed to months and years.”  23 S.W.3d at 529.  Here, Green was injured on June 12,
2003.  Lowe’s filed Green’s workers’
compensation claim on June 19, and granted Green a medical leave of absence
starting on June 27.  Green was released
to return to work on August 28, and actually returned on September 8.  Lowe’s received the anonymous Alertline
harassment tip on October 20.  Lowe’s
terminated Green on November 3.  Thus,
over four and a half months passed between the filing of Green’s workers’
compensation claim and Green’s termination. 
None of the cases cited above hold a four-month period sufficiently
proximate to create the necessary causal link. 
In fact, one of the cases Green cites, Rath, notes that a four-month
period is not sufficiently proximate. 
978 F.2d at 1090.  Nearly two
months passed between Green’s return to work and his subsequent termination,
while only two weeks passed between the sexual harassment allegations and
Green’s termination.  We hold that four
months between the filing of the claim and termination, without more, does not
raise a fact issue as to a causal link, when the stated grounds for termination
reached fruition within the same period. 
We conclude that, in light of the intervening sexual harassment
allegations, Green has failed to raise a fact issue based upon temporal
proximity.

 

 

Conclusion

We hold that Green has failed to
raise a fact issue as to the causal link between his workers’ compensation
claim and his termination.  We affirm the
summary judgment of the trial court.

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Alcala, and Bland.