Robert GREEN, Appellant,

v.

**LOWE'S HOME CENTERS, INC., Appellee.**

No. 01–05–00937–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 2006.

Ellen Sprovach, Rosenbert & Sprovach, Houston, for appellant.

James Bradley Spalding, Fazila Issa, Littler Mendelson, P.C., Houston, for appellee.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

JANE BLAND, Justice.

Lowe's Home Centers, Inc. terminated Robert Green on the basis that he harassed several coworkers in violation of its sexual harassment policy. Green sued Lowe's, contending that it had, in fact, fired him in retaliation for his filing of a workers' compensation claim. The trial court granted summary judgment in favor of Lowe's. Green appeals, contending fact issues exist as to (1) whether he has established a prima facie case of retaliation by showing a causal link between his termination and his workers' compensation claim, (2) whether Lowe's purported reason for terminating Green—that he committed sexual harassment in the workplace—was a pretext for a retaliatory pur-pose, and (3) whether Green is entitled to punitive damages. We agree with the trial court that Green has failed to raise a fact issue as to the causal link between his termination and workers' compensation claim and therefore affirm.

## Background

In February 1999, Lowe's hired Green to work as a sales specialist in the appliance department of its Willowbrook, Houston location. Green sold appliances, retrieved them from the storage area, and moved them from one area of the store to another. Green ranked as a top salesman. In June 2003, a refrigerator fell on Green, severely injuring his hand. Tom Moten, the store manager, gave Green a Lowe's credit card for use at a hospital emergency room. Shortly thereafter, Lowe's filed a workers' compensation claim on Green's behalf and granted Green a paid medical leave. Green received workers' compensation benefits throughout his leave.

Green's physician released him to return to work near the end of August, with some physical work restrictions, including no pushing, pulling, lifting, climbing, grasping, or operating heavy machinery. Green returned to his sales specialist position on September 8. Lowe's offered Green a light-duty position as a door greeter, a job that paid 37% less than the sales specialist position, but one that conformed to all of Green's physical work restrictions. Green testified in his deposition that Mary Latona, the store's human resources manager, offered him a choice between remaining a sales specialist at his pre-injury pay, performing only the sales and computer input portions of the job while another employee performed the physical aspects of the job, or taking the light-duty position of door greeter. Latona advised Green that it would probably be best for him to remain a sales specialist. Green chose to do so,

and Lowe's hired another person to perform the physical component of Green's job.

On October 20, Lowe's received an anonymous call on its Alertline—a phone number Lowe's encourages its employees to call to report workplace harassment—alleging that Green had sexually harassed several female employees. Specifically, the caller alleged that Green would discuss the size of his penis at work and offer female employees money for sex, making them uncomfortable; he would massage female employees on the shoulders, hug them, and touch them in inappropriate ways; and he would comment on the size of female employees' breasts. The caller alleged that other employees may not have felt comfortable reporting Green's behavior because management favored Green.

Based on the call, Latona investigated Green's alleged improper behavior. She obtained statements from Green and four women who regularly worked with him. Amber Zook stated that Green made sexual comments to female employees; hugged Zook in the break room, despite her resistance, which caused her to avoid Green; made comments about having sex with her; and detailed to her how he would perform oral sex on women. Karie Neiser stated that Green kissed her on two occasions, gave her a massage, gave her one or two hugs, and invited her for drinks and dinner. Neiser also stated that Green had never actually accompanied her anywhere outside of work, had never made sexual comments to other employees in her presence, but only had offered to drive her home because she did not have a car. Alhere Gajere stated that Green hugged her very tight so he could feel her chest, made sexual remarks about the size of his penis, made comments to her about the size of women's breasts, and stated that he was a "pimp" and would pay women to

sleep with him. Gajere also stated that she had heard other employees talk about Green's touching them, and that many employees did not talk to Green because he made them uncomfortable. Melissa Chavis stated that she had not seen Green touch, kiss, or hug anyone at Lowe's, that Green was a very nice person, and that Green had not offered anyone money for sex in her presence, but that she had heard Green make sexual comments that were out of line.

Green gave two statements in which he denied the allegations of improper behavior made against him. Green admitted that he had hugged Neiser, but claimed it was consensual. He stated that it was his word against the women's, and he had no additional evidence to controvert his accusers. Based on Latona's investigation, Lowe's terminated Green on November 3, 2003. Lowe's informed Green that the reason for his termination was violation of its sexual harassment policy. Green subsequently filed this lawsuit, alleging that Lowe's terminated him because he had filed a workers' compensation claim, and that it used the sexual harassment charges as a pretext for its wrongful conduct.

### Standard of Review

We review the trial court's ruling on a summary judgment motion de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). We view the evidence in a light most favorable to the non-movant, making all reasonable inferences and resolving all doubts in the non-movant's favor. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999). Because the summary judgment order does not specify the ground or grounds on which the trial court relied for its ruling, we affirm it if any of the summary judgment grounds is meritorious.

*FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

Here, Lowe's sought both a traditional and a no-evidence summary judgment. The movant for a traditional summary judgment has the burden to show that no genuine issue of material fact exists and thus he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). Once the movant shows he is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a fact issue to defeat the motion for summary judgment. *Haight v. Savoy Apartments*, 814 S.W.2d 849, 851 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

■ In a no-evidence summary judgment, the movant represents that no evidence exists as to one or more essential elements of the non-movant's claims, upon which the non-movant would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). On review, we ascertain whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). If the evidence does no more than create a mere surmise or suspicion of fact, less than a scintilla of evidence exists. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711–12 (Tex.1997). Although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on each of the challenged elements. TEX.R. CIV. P. 166a(i). The fact that a movant attaches evidence to a motion for summary judgment on both traditional and no-evidence grounds does not foreclose it from asserting that there is, in fact, no evidence with regard to a particular element. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex.2004). Rather, any attached evidence should be examined to determine whether it creates a fact question. *Id.*

### Discussion

Green contends that the trial court improperly granted summary judgment because fact issues remain as to (1) whether he has established the causal link between his termination and his workers' compensation claim necessary to establish his prima facie case of discrimination, (2) whether he rebutted Lowe's legitimate, non-discriminatory explanation of sexual harassment by demonstrating that his termination was retaliatory in nature, and (3) whether Lowe's acted with malice, thus entitling him to punitive damages.

■ Section 451.001 of the Texas Labor Code prohibits an employer from discharging an employee for filing a workers' compensation claim in good faith. TEX. LAB.CODE ANN. § 451.001 (Vernon 2006). The employee has the initial burden of demonstrating a causal link between the discharge and the filing of a workers' compensation claim. *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.-Dallas 2004, no pet.). The employee need not show he was fired solely because of filing the workers' compensation claim. *Lee v. Haynes & Boone, L.L.P.*, 129 S.W.3d 192, 196 (Tex.App.-Dallas 2004, pet. denied). Rather, he must show that, "but for" the filing of the claim, the discharge would not have occurred when it did. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 386 (Tex.2005).

■ Once the employee establishes a causal link, the employer bears the burden to rebut the alleged improper termination by showing that a legitimate reason exists for termination. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 & n. 3 (Tex.1996). Thereafter, in order to survive a motion for summary judgment, the burden shifts back to the employee to produce controverting evidence raising a fact issue as to a retaliatory motive. *McIntyre v. Lockheed Corp.*, 970 S.W.2d 695, 697 (Tex.App.-Fort Worth 1998, no pet.).

■ An employee may establish a link between termination and the filing of a workers' compensation claim through circumstantial evidence or through reasonable inferences from the evidence. *Cazarez*, 937 S.W.2d at 451; *Lee*, 129 S.W.3d at 196. Circumstantial evidence sufficient to establish a causal link between termination and filing a workers' compensation claim may include (1) knowledge of the compensation claim by those making the termination decision; (2) an expression of a negative attitude toward the employee's injured condition; (3) a failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Cazarez*, 937 S.W.2d at 451. In addition, temporal proximity between the assertion of a protected right and termination may be evidence of a causal connection. *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). Here, Green contends fact issues remain as to each of these issues. We address each in turn.

*Knowledge of the Workers' Compensation Claim*

■ It is undisputed that Lowe's knew about Green's workers' compensa-tion claim. In fact, Lowe's records indicate that Lowe's filed Green's workers' compensation claim on his behalf. In addition, the manager on duty when Green was injured gave Green a Lowe's credit card to pay for his immediate medical treatment, and Lowe's granted Green a paid medical leave of absence while he recovered from his injury. However, knowledge of a workers' compensation claim alone does not establish a causal link between the alleged discriminatory behavior and the filing of a claim sufficient to defeat summary judgment; rather, it is one factor to be considered in light of the record as a whole. *See Courtney v. Nibco, Inc.*, 152 S.W.3d 640, 644 (Tex.App.-Tyler 2004, no pet.); *Lone Star Steel Co. v. Hatten*, 104 S.W.3d 323, 327–28 (Tex.App.-Texarkana 2003, no pet.). Here, we examine whether Green raises a fact issue indicating that Lowe's knowledge of Green's workers' compensation claim led to his discharge in light of the remaining record.

*Negative Attitude Toward Green's Injury*

Green contends that he raises a fact issue with evidence that Lowe's expressed a negative attitude toward his injury because Latona asked him, upon his return to work, to consider a light-duty position as a door greeter at a 37% reduction in pay.

■ As Lowe's points out, Texas law permits "[a]n employer [to] offer an employee a modified duty position which has restricted duties which are within the employee's work abilities as determined by the employee's treating doctor." 28 TEX. ADMIN. CODE § 129.6(b) (2006). In addition, a reduction in pay following a work related injury does not necessarily demonstrate a negative attitude toward the injury if the employee cannot assume his pre-

injury responsibilities. *See Garcia v. Levi Strauss & Co.*, 85 S.W.3d 362, 368–69 (Tex. App.-El Paso 2002, no pet.). Here, the physical work restrictions Green's doctor imposed prevented Green from lifting, pushing, or pulling appliances, and upon his return to work his arm remained in a splint. Lowe's nonetheless allowed Green to return to his former position with no pay reduction, only requiring that Green perform the customer service and computer input aspects of the job, while hiring another individual to perform the physical aspects of the job. Green admits that Latona ultimately told him that the best thing for him would be to remain in the sales specialist position performing computer duties. Green also admitted that Lowe's never asked him to perform any tasks after returning to work that violated the physical restrictions his doctor had imposed. Viewed in a light most favorable to Green, Lowe's offer of a lighter duty, lower paying position, in light of the actual accommodations it made to Green after he returned from his injury, does not create a fact issue regarding whether it expressed a negative attitude toward his injury.

### Adherence to Company Policy

Green contends Lowe's failed to adhere to its own policies when conducting the sexual harassment investigation against him. Specifically, Green contends that (1) Green's alleged behavior did not satisfy Lowe's definition of sexual harassment, given that his accusers did not indicate that his behavior was unwelcome, and (2) his accusers failed to immediately report the alleged harassment as required by Lowe's sexual harassment policy, thus creating an obligation that Lowe's investigate those employees.

Lowe's human resources guide defines sexual harassment as "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature." Lowe's orientation guide states that Lowe's has a "zero tolerance for harassment of any kind in the work environment." The anonymous Alertline tip alleged that Green made "inappropriate" comments about the size of his penis, talked about having sex with female employees, hugged and massaged female employees, and offered female employees money for sex. The fact that an employee called the Alertline to report Green's behavior, alleging specifically that Green made "inappropriate comments" that "make[ ] employees uncomfortable" is some indication that his behavior was unwelcome. Latona confirmed these allegations through signed, written statements made by several of Green's coworkers. For example, Zook stated that she pushed Green away when he hugged her in the break room and thereafter she avoided him, but he continued to make specific, suggestive sexual comments to her. Gajere stated that Green hugged her to feel her chest, commented on the size of her breasts, and that he is "a person you don't feel comfortable around or to even trust." Chavis stated that Green made sexual comments that were "out of line." These statements are some evidence from which Lowe's could conclude that Green's behavior was unwelcome and in violation of company policy. Moreover, Green admitted that he was aware of Lowe's zero tolerance for harassment policy, and that he did not have any evidence to support his contention that his behavior toward his coworkers was welcome other than his own statement to that effect. Moten testified in his deposition that he believed Green lied in his interview with Latona when he denied the sexual harassment allegations against him. In its investigation, Lowe's was entitled to disbelieve Green's statement that his behavior was welcome. We conclude that Green has failed to raise a fact issue

concerning whether Lowe's stated reason for terminating Green was false.

Green next contends Lowe's failed to adhere to company policy by failing to investigate the delay in reporting his conduct to management by his female accusers. Lowe's management guide states that:

A. All employees must help to maintain a work environment free from harassment or discrimination. This includes refraining from engaging in harassing or discriminatory conduct, as well as an obligation to make management aware if such conduct is occurring in the work environment.

B. All managers are charged with the responsibility of assuring a work environment free from harassment. This includes being aware of activity within their area of responsibility and taking immediate and appropriate corrective action to stop and prevent harassment in any form.

...

D. Managers willfully failing to act on known harassment or discriminatory activity within their area of responsibility are subject to disciplinary action up to and including termination.

...

E. *(REV) Confidentiality*—All reports and investigations of harassment will be treated confidentially to every extent possible. All harassment and discrimination complaints will be promptly investigated, and if it is determined that inappropriate conduct has occurred, appropriate disciplinary action will be taken against the offending party, up to and including discharge.

F. *(REV) False Representation*—Employees found to have knowingly made a false representation in making a complaint or giving a statement during a Company investigation of a complaint of harassment and/ or discrimination will be subject to discipline. Such discipline may include termination.

G *(REV) Retaliation* against any person, who has complained about harassment or discrimination, filed a charge of harassment or discrimination, or who has otherwise participated in an investigation of such a complaint will *not* be tolerated. Such activity is unlawful and will result in severe discipline, up to and including discharge.

Green provides no evidence that Lowe's failed to adhere to its policies by failing to investigate his accusers. Lowe's new employee orientation guide encourages employees to report sexual harassment, and provides procedures for using its "open door policy," but it does not provide procedures for handling an employee's failure to report sexual harassment. The guide neither states that an employee who fails to report sexual harassment will be investigated, nor that a failure to report sexual harassment is grounds for termination.

In addition, Green presents no evidence to raise a fact issue concerning whether Lowe's failed to adhere to company policy in its handling of his sexual harassment investigation. Green presents no evidence suggesting that sexual harassment investigations have been handled differently in cases in which the accused had not previously filed a workers' compensation claim, nor does he present evidence that Lowe's typically investigates accusing employees who failed to immediately report sexual harassment. *Cf. Tex. Dep't of Assistive & Rehabilitative Servs. v. Howard*, 182 S.W.3d 393, 405–06 (Tex.App.-Austin 2005, no pet.) (finding legally and factually sufficient evidence of discrimination where witness testified that more serious violations than those perpetrated by plaintiff/employee were tolerated, and plaintiff/employee was only person ever disciplined for such

behavior). Green presents no evidence that other employees found to have been engaged in sexual harassment after an investigation continued working at Lowe's despite the findings of the investigation. Green presents no evidence to contradict Latona's conclusion that Green's behavior satisfies Lowe's broad definition of sexual harassment. The accusations against Green came from more than one employee, indicated that harassing behavior had occurred on repeated occasions, and fell within Lowe's definition of harassment. We conclude that Green fails to raise a fact issue as to whether Lowe's failed to adhere to company policy in conducting his sexual harassment investigation.

*Less Favorable Treatment than Similarly Situated Employees*

Green next contends he was treated less favorably than similarly situated employees because his accusers were not investigated for their failure to immediately report any alleged sexual harassment. Green's accusers, however, are not employees who are similarly situated to him; rather, it is other employees who were accused of sexual harassment who are similarly situated. Green presents no evidence of how Lowe's treated other employees whom it investigated for harassment. Concomitantly, Green presents no evidence that Lowe's typically investigates accusers of harassment in the same manner as the accused, and its company policy does not so provide. In short, we conclude Green has failed to raise a fact issue concerning whether Lowe's treated Green differently than similarly situated employees in implementing its company policies.

*Stated Reason for Discharge Was False*

Green contends a fact issue remains concerning whether Lowe's stated reason for discharging him was false. Specifically, Green reiterates his arguments that his behavior did not satisfy Lowe's definition of sexual harassment because it was not unwelcome, and that Lowe's violated company policy by failing to investigate his accusers. In support of these arguments, Green notes that the alleged sexual harassment occurred between six and eleven months prior to his termination, and presents his statement that he did not commit the acts alleged against him by his accusers. Green presents no evidence of Lowe's awareness of any complaint of harassment before the Alertline call; nor does the summary judgment record reveal the dates of the alleged harassment. Green has failed to present a scintilla of evidence to demonstrate that Lowe's purported reason for terminating him was false, and Green's subjective belief regarding the reason for his discharge is insufficient to raise a fact issue. *See Lee,* 129 S.W.3d at 197 (citing *Tex. Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313–14 (Tex.1994) (per curiam) (appellant's subjective beliefs are no more than conclusions and are therefore not competent summary judgment evidence)).

*Temporal Proximity*

Finally, Green contends the temporal proximity between his return to work from his work-related injury and his termination is sufficient to create a fact issue concerning whether there is a causal link between his termination and his workers' compensation claim. The cases Green cites in support of his contention that temporal proximity may establish a causal link refer to the relevant time period as the time between the protected activity—in this case the filing of the workers' compensation claim—and the termination. *See Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992); *Munoz v. H & M Wholesale, Inc.,* 926 F.Supp. 596, 610 (S.D.Tex.1996); *Fields,* 23 S.W.3d at 529; *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 84 (Tex.App.-El Paso 1992, no writ);

*Chem. Express Carriers v. Pina,* 819 S.W.2d 585, 590 (Tex.App.-El Paso 1991, writ denied). In *Fields,* we rejected a union's argument that temporal proximity could never provide evidence of causal connection, stating that "proximity may establish a causal connection between [the] complaint and the adverse employment action when, as here, they are separated by weeks, as opposed to months and years." 23 S.W.3d at 529. Here, Green was injured on June 12, 2003. Lowe's filed Green's workers' compensation claim on June 19, and granted Green a medical leave of absence starting on June 27. Green was released to return to work on August 28, and actually returned on September 8. Lowe's received the anonymous Alertline harassment tip on October 20. Lowe's terminated Green on November 3. Thus, over four and a half months passed between the filing of Green's workers' compensation claim and Green's termination. None of the cases cited above hold a *four-month* period sufficiently proximate to create the necessary causal link. In fact, one of the cases Green cites, *Rath,* notes that a four-month period is not sufficiently proximate. 978 F.2d at 1090. Nearly two months passed between Green's return to work and his subsequent termination, while only two weeks passed between the sexual harassment allegations and Green's termination. We hold that four months between the filing of the claim and termination, without more, does not raise a fact issue as to a causal link, when the stated grounds for termination reached fruition within the same period. We conclude that, in light of the intervening sexual harassment allegations, Green has failed to raise a fact issue based upon temporal proximity.

## Conclusion

We hold that Green has failed to raise a fact issue as to the causal link between his workers' compensation claim and his termination. We affirm the summary judgment of the trial court.