Opinion issued October 1,
2009

 

 

 

 

 

 

 

 

 

 

 

 

 

 










 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00807-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JACQUELINE PERRY, Appellant

 

V.

 

UNIVERSITY OF HOUSTON—DOWNTOWN, Appellee

 

 



On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 0734040

 








 



MEMORANDUM OPINION

          After the University of Houston
Downtown (UHD) fired Jacqueline Perry, Perry sued UHD, contending that it had
fired her in retaliation for filing racial discrimination charges against UHD
with the Equal Employment Opportunity Commission (EEOC) and a discrimination
suit against UHD in federal district court.  The trial court granted summary
judgment in favor of UHD.  On appeal, Perry contends that the trial court erred
in granting summary judgment because (1) a fact issue exists as to whether she
established a prima facie case of retaliation and (2) UHD committed fraud by attaching
evidence of her federal lawsuit and her EEOC charges to its summary judgment
motion.  We conclude that Perry failed to raise a material fact issue to
support her retaliation claim and therefore affirm the judgment of the trial
court.                                                                                                          


Background

In August 1998, UHD hired Perry to
work as a transcript analyst in the admissions department. Perry filed her
first EEOC charge in April 2001, alleging racial discrimination.  She filed two
more EEOC charges on April 30, 2004 and May 14, 2004.  These charges also
allege racial discrimination, specifically, that numerous people—including her
supervisors, co-workers, the university president, vendors, students, campus
police, and Harris County sheriffs—participated in various wrongdoings,
including wiretapping her home phone, spreading rumors about her, circulating a
petition to get her fired, illegally obtaining her college transcripts,
taunting her with hand gestures, making harmful remarks, and giving her
unwarranted parking tickets.  In May 2005, Perry brought a federal suit against
UHD based on these charges.  When Perry did not timely serve UHD with the
summons or complaint, however, the federal court dismissed the suit for want of
prosecution.

UHD hired Carmen Allen as director of
admissions, and she became Perry’s supervisor in January 2005.  According to
Allen, Perry soon began accusing her and others of harassment, but did not
explain specific examples of the perceived harassment.    

At the same time, Allen had a number
of concerns with Perry’s performance.  Several of Perry’s co-workers had
complained to Allen about Perry’s conduct, indicating that she was
uncooperative and producing deficient work.  Allen attempted to resolve these
issues informally, but found Perry to be unreceptive.  When Allen
addressed Perry about her performance problems, Perry made unsubstantiated
claims that someone was sabotaging her work. 

From 1999 through 2004, Perry
received generally positive job evaluations from her supervisors, ranging from
acceptable to outstanding.  Allen gave Perry her annual performance evaluation
on May 18, 2005.  The evaluation rates Perry’s overall performance as “needs
improvement”; however, it ranked many of Perry’s individual skills as
“competent.”  Areas targeted for improvement include working relationships, interpersonal
skills, professional development, and professionalism.  On the evaluation form,
Perry noted her disagreement with most of the rankings and wrote in her own
comments defending her work.  

Allen failed to see Perry’s
performance improve on any of the areas targeted in her evaluation.  On June 2,
2005, Allen placed Perry on three weeks’ disciplinary probation for
“inefficiency, incompetency, or negligence in the performance of duties.”  Perry
was ordered to improve her performance in the following areas: (1) timely work
completion, (2) positive and productive communication, (3) compliance with
job-related requests by her supervisor, and (4) professional conduct. 

When Perry failed to improve her
performance during that probationary period, Allen took further disciplinary
action, suspending Perry for three days without pay, followed by an additional
two weeks’ probation.  Perry refused to sign the notice of disciplinary action.
 The notice cited eight incidents that had occurred during the first probationary
period:

·       
June 7—When asked to correct work,
Perry was unreceptive and argumentative, reminding Allen of her experience in
her position.

 

·       
June 7—When asked to correct work,
Perry claimed that the new process did not make sense and that her work was being
sabotaged.

 

·       
June 8—Perry e-mailed Allen
repetitively rather than making an initial effort to correct a problem or
speaking with Allen in person, as requested.

 

·       
June 10—When asked to correct late
work, Perry implied that her work was deleted and that she was not responsible.

 

·       
June 10—Perry attempted to request
leave time that she did not have. When told that the leave could not be
approved, she implied that Allen was incorrect.

 

·       
June 14—When asked to correct
work, Perry replied that it was “a waste of time and totally outrageous,” then
deleted the assignment rather than correct it. 

 

·       
June 20—Allen again instructed
Perry to correct the June 14 assignment. Perry insisted that she had done so,
but someone else had deleted it.

 

·       
June 23—When asked to correct a
mistake in her work Perry refused to accept responsibility for the error and
instead blamed another employee.

 

Allen gave Perry notice of her
termination on July 26, 2005.  The notice cited four specific instances of
Perry’s conduct during the prior two-week probationary period that demonstrated
her failure to improve her performance:

·       
July 1—When instructed to make a
correction, Perry argued that it was already correct.

 

·       
July 1—When instructed to make
another correction, Perry argued that it was already correct, and that “this
behavior” was hurting the students, while specifying that it was not her
behavior.

 

·       
July 12—Perry turned in a leave
form for the time of her suspension, listing the purposes of leave as “an act
of retaliation” 

 

·       
July 13—When instructed to correct
a date, Perry did so, but replied that the error was “a big slip of the fingers
on someone else’s part.”

 

In the notice’s comments section,
Perry wrote that the termination constituted an act of retaliation. 

Perry filed her EEOC retaliation
charge on November 29, 2005, claiming that she was disciplined and ultimately
discharged because of her prior EEOC charges and lawsuit.  Perry then filed
this lawsuit. 

UHD moved for summary judgment. 
Among other evidence, UHD attached Allen’s affidavit, in which Allen testified
that before Perry’s termination, she was not aware that Perry had filed any
EEOC charges or a federal lawsuit.  At the meeting culminating in Perry’s
termination, Perry mentioned to Allen that she believed her termination was an
act of retaliation, but Perry did not elaborate on the source of the claimed
retaliation.  Allen did not learn of Perry’s prior discrimination charges until
Perry filed her November 2005 EEOC charge.  No one at UHD knew of
Perry’s federal lawsuit until after her discharge, when it was served.   Perry
admitted during her deposition that she did not tell anyone at UHD about the
suit. 

Discussion

We review the trial court’s ruling on
a summary judgment motion de novo.  Provident Life & Accid. Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We view the evidence in a light
most favorable to the non-movant, making all reasonable inferences and
resolving all doubts in the non-movant’s favor.  Rhone-Poulenc, Inc. v.
Steel, 997 S.W.2d 217, 223 (Tex. 1999).  Because the summary judgment order
does not specify the ground or grounds on which the trial court relied for its
ruling, we affirm the judgment if any of the summary judgment grounds is
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000).

          Here, UHD sought summary
judgment under rule 166a(c).  Tex. R.
Civ. P. 166a(c).  Under this provision, the movant has the burden to
show that no genuine issue of material fact exists and thus is entitled to judgment
as a matter of law.  Id.; KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  Once the movant shows it is
entitled to judgment as a matter of law, the burden shifts to the non-movant to
present evidence raising a fact issue to defeat the motion for summary judgment. 
Green v. Lowe’s Home Centers, Inc., 199 S.W.3d 514, 517–18 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  The same standards for
evidence that would be applicable at a regular trial apply to a summary
judgment proceeding.  United Blood Servs. v. Longoria, 938 S.W.2d 29, 30
(Tex. 1997).

Retaliation claim

Perry contends that (1) the trial
court improperly granted summary judgment because a fact issue exists as to
whether she has established a prima facie case of retaliation and (2) UHD committed fraud in its summary
judgment motion by attaching evidence of her federal lawsuit and her EEOC
charges.

Perry brings her claim under the
Texas Commission on Human Rights Act (TCHRA), the state counterpart to Title
VII of the Civil Rights Act of 1964.  See Tex. Lab. Code Ann. § 21.001(1) (Vernon 2006); Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).  TCHRA provides that

“[a]n employer . . . commits an unlawful employment
practice if the employer . . . retaliates or discriminates against a person
who, under this chapter:  1) opposes a discriminatory practice; 2) makes or
files a charge; 3) files a complaint; or 4) testifies, assists, or participates
in any manner in an investigation, proceeding, or hearing.” 

 

Tex. Lab. Code
Ann. § 21.055
(Vernon 2006). 

          To establish a prima facie
case of retaliation, a claimant must show that (1) she engaged in a protected
activity, (2) an adverse employment action occurred, and (3) a causal link
between the filing of the claim and the termination.  Green, 199 S.W.3d
at 518; see Burlington N. & Santa Fe Ry. v. White, 548 U.S.
53, 67–68, 126 S. Ct. 2405, 2414–15 (2006).[1]

Once the employee establishes a prima
facie case, the employer bears the burden to rebut the alleged improper
termination by producing evidence that a legitimate reason exists for
termination.  Green, 199 S.W.3d at 519.  If the employer satisfies its
burden of production, the burden shifts back to the employee to raise a fact
issue as to a retaliatory motive.  Id.

          UHD moved for summary
judgment on the basis that Perry failed to raise a prima facie case of
retaliation.  Perry satisfies the first two elements of her prima facie case. 
The undisputed evidence shows that (1) she filed EEOC discrimination charges
and a federal lawsuit, and (2) UHD placed her on probation, suspended her, and
then fired her.  

UHD’s motion focuses on the third
element of the prima facie case, contending that Perry has adduced no evidence
showing that a causal link between Perry’s earlier claims of discrimination and
her discharge.  An employee may establish a link between termination and the
protected activity through either circumstantial evidence or reasonable
inferences from the evidence.  Id. at 519.  Circumstantial evidence
sufficient to show a causal link between termination and the filing of a
discrimination charge or suit may include (1) the employer’s failure to follow
its usual policy and procedures in carrying out the challenged employment
actions; (2) discriminatory treatment in comparison to similarly situated
employees; (3) knowledge of the discrimination charge or suit by those making
the termination decision; (4) evidence that the stated reason for discharge was
false; and (5) the temporal proximity between the employee’s conduct and discharge. 
Id. 

          Compliance with
university policy

          UHD encourages a
progressive system of discipline, which includes personal conference, written
reprimand, suspension, and lastly, dismissal. UHD policy lists as grounds for
discipline “inefficiency, incompetency, or negligence in the performance of
duties.”  The policy instructs that the notice of disciplinary action should
clearly identify the problem, identify the remedial action expected, state the
results of failure to take the specified remedial action, and allow the
employee an opportunity to respond.  The policy states that dismissal is
appropriate when substandard performance persists despite one or more attempts
at correction. 

The records of Perry’s seven-year
employment history with UHD do not reflect unsatisfactory performance until her
final year of employment.  Her employment file contains positive job
performance evaluations, and Perry produced several e-mails from co-workers and
UHD professors praising her work, all of which predate the period in which she
came under Allen’s supervision. 

After Allen became Perry’s supervisor
in 2005, Allen’s affidavit identifies, and Perry’s employment records confirm,
specific instances of incompetent and insubordinate conduct.  The disciplinary
actions taken against Perry during this period comply with UHD’s stated
policies.  Each notice specified the problem, prescribed corrective action, and
informed Perry of the results if the corrective action did not occur.  Perry
had the opportunity to respond to each action.  The disciplinary actions
started with an informal conference, and Perry’s persistent failure to correct
her work performance as prescribed led to probation, suspension, and
termination.  Perry did not produce any evidence to challenge UHD’s adherence to
its progressive discipline policy or to show that UHD treated her less
favorably than other similarly situated employees.  

Knowledge and timing

          Temporal proximity between
the filing of an EEOC charge or a discrimination suit and a disciplinary action
may be evidence of a causal connection when they are separated by weeks, as
opposed to months or years.  Green, 199 S.W.3d at 523.  Perry’s
retaliation claim relies on the EEOC charges she filed in 2001 and the spring
of 2004.  UHD did not discipline Perry until June 2005.  A year between
protected activity and a disciplinary action is not sufficiently proximate to
show a causal link without other evidence that the firing was retaliatory.  See
id.  Perry also fails to show a causal link between her federal lawsuit
and her discipline and termination.  Perry admitted in her deposition that no
one at UHD knew she had filed her lawsuit before it fired her, and she did not
serve UHD with the suit until several months after her discharge.

Temporal proximity may be evidence of
a causal connection between the filing of an EEOC charge and the adverse
employment action only when a person with input into the employment decision
was aware of the protected activity.  See Davis v. Dallas Area Rapid Transit,
383 F.3d 309, 320 (5th Cir. 2004); Marsaglia v. Univ. of Texas, El Paso,
22 S.W.3d 1, 5 (Tex. App.—El Paso 1999, pet. denied) (affirming summary
judgment where evidence failed to show that decision-maker had any knowledge of
appellant’s protected activity).  Allen’s uncontroverted testimony establishes that
she was unaware of the lawsuit and the EEOC charges at the time she discharged
Perry.  Thus, Perry failed to raise a fact issue to make the required causal
link between her protected activity in filing those discrimination claims and
the adverse employment action.

UHD produced summary judgment
evidence that it had legitimate non-retaliatory reasons for terminating Perry. 
See Green, 199 S.W.3d at 519.  The evidence before the trial court
uniformly showed that Perry had unsatisfactory work performance and failed to
correct it.  Perry offers only her subjective beliefs to counter UHD’s
proffered reasons for her discipline and discharge. To establish a genuine
issue of material fact, evidence must be more than merely subjective and
speculative. See id. at 522 (appellant’s subjective belief regarding
reason for discharge is insufficient to raise fact issue); Farrington v.
Sysco Food Servs., Inc., 865 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.]
1993, pet. denied) (stating that subjective beliefs of discrimination alone are
insufficient to establish prima facie case).   Thus, we hold that the Perry
failed to raise a genuine issue of material fact supporting the causation
element of her prima facie case.

Fraud complaint

Perry complains that UHD fabricated
the evidence and misled the trial court concerning the reasons for Perry’s
discharge. But Perry fails to produce any evidence to
support her claim.  Her generalized assertions do not a raise fact issue
as to pretext. See Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004); Wadewitz
v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997).  Perry alleges that UHD
committed fraud in their summary judgment motion by attaching the pleadings for
her federal lawsuit and her EEOC charges, but she
does not present evidence disputing the truth of any of the specific
allegations Perry herself made within those documents.  The trial court could
properly consider Perry’s prior EEOC and lawsuit filings, which
establish the dates and subject matter of the protected activities that serve
as grounds for her retaliation claim.

Conclusion

We hold that Perry has failed to adduce
any evidence to support the causal link essential to her retaliation claim.  We
therefore affirm the judgment of the trial court. 

All pending motions are dismissed as
moot.

 

                                                          

Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Massengale.

 









[1]
Because TCHRA seeks to promote federal civil
rights policy, we may look to analogous federal precedent to interpret it.  Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001); Fields v.
Teamsters Local Union No. 988, 23 S.W.3d 517, 524 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).