**REVERSE and REMAND; and Opinion Filed July 15, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01654-CV

### JOHN STILLWELL, Appellant
### V.
### HALFF ASSOCIATES, INC. AND DIANNE POPKEN, Appellees

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-01050**

## MEMORANDUM OPINION

Before Chief Justice Wright and Justices Moseley and Richter[1]
Opinion by Justice Richter

John L. Stillwell appeals from a summary judgment granted in favor of Halff Associates, Inc. and Dianne Popken in his wrongful termination lawsuit. On appeal, Stillwell contends the trial court erred in granting summary judgment and in overruling his objections to Halff's summary judgment evidence. Concluding that fact issues exist, we reverse the trial court's judgment and remand this case to the trial court.

### Background

In August of 2003, Halff hired Stillwell as a professional engineer. Stillwell was 50 years old when he was hired. Popken was his immediate supervisor for the duration of his employment at Halff. Stillwell was an experienced engineer and became a project manager.

---

[1] The Hon. Martin Richter, Justice, Assigned.

As a project manager, Stillwell was required to manage the time utilized to complete his projects. Stillwell worked with several Engineers-in-Training (EITs). In 2005, Stillwell began complaining to Popken about the work ethic of three of the EITs. Each of these EITs was under the age of forty. Specifically, Stillwell complained that they did not work full days and improperly billed time on projects that he managed. In response, Popken reminded employees to record their time accurately.

In 2008, the amount of Halff's future expected work dropped significantly. As a result, Halff laid off approximately thirty employees in the summer of 2008. In May of 2009, as a result of the continued decline in future expected work, Halff laid off another sixty employees, including Stillwell. Of these sixty employees, twenty-three were over the age of forty.

At the time of his termination, Stillwell was involved with nineteen projects. These projects required from six months to one year to complete. Following the termination of his employment, Stillwell filed a complaint with the Equal Employment Opportunity Commission alleging that he was terminated because of his age and retaliated against. The EEOC found no cause to believe any discrimination or retaliation had occurred and issued its right to sue letter.

Stillwell sued Halff and Popken alleging unlawful termination, hostile work environment, and retaliation. The trial court granted the motion for summary judgment filed by Halff and Popken. This appeal timely followed.

## Standard of Review

Halff sought summary judgment on both traditional and no-evidence grounds. The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). For a defendant to prevail on a traditional motion for summary

judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or conclusively establish all elements of an affirmative defense. *Kalyanaram v. Univ. of Tex. Sys.,* 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz,* 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element or elements. *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003). In conducting our no-evidence summary judgment review, we review the evidence in the light most favorable to the nonmovant, credit evidence favorable to that party if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch*, 118 S.W.3d at 751.

### Age Discrimination

In his first amended petition, Stillwell alleged causes of action against Halff and Popken for wrongful termination, hostile work environment, and retaliation. At oral argument, counsel for Stillwell conceded that his claims against Popken should be dismissed and that the claim of hostile work environment has been waived. Accordingly, we address only Stillwell's claims for wrongful termination and retaliation against Halff.

Stillwell alleged that Halff discriminated against him on the basis of his age when it terminated his employment. Under the Texas Commission on Human Rights Act, an employer commits an unlawful employment practice, if the employer discharges a person because of race, color, disability, religion, sex, national origin, or age. *See* TEX. LAB. CODE ANN. § 21.051 (West 2006). Texas courts look to federal interpretation of analogous federal statutes for guidance

because an express purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001(1) (West 2006).

A claim for age discrimination, consists of four elements: (1) the plaintiff is a member of the protected class; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the position from which he was discharged; (4) the plaintiff was replaced by someone outside the protected class or was otherwise discharged because of his age. *Russo v. Smith Int'l, Inc.,* 93 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The protected class in an age discrimination suit is restricted to people forty years of age or older. TEX. LAB. CODE ANN. § 21.101 (West 2006). Because plaintiffs in a workforce reduction case are laid off and frequently unable to prove the replacement element, the Fifth Circuit requires direct or circumstantial evidence from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir. 1996).

Under the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-06, 93 S. Ct. 1817, 1824–26, 36 L. Ed. 668 (1973), the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. If the plaintiff is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The burden then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825-26. Proof that a defendant's explanation is not credible is one form of circumstantial evidence that is probative of intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S. Ct. 2097, 2108, 147 L. Ed. 105 (2000).

Stillwell made the initial showing that he was a member of a protected class, he was discharged, and he was otherwise qualified for the position. Thus, the burden shifted to Halff to demonstrate a legitimate, nondiscriminatory reason for Stillwell's termination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824.

Halff moved for summary judgment on Stillwell's claim of age discrimination on the grounds that Stillwell could not overcome the nondiscriminatory reason that it needed to reduce the number of its employees and that there was no evidence that age was a motivating factor in his termination. To support its grounds for summary judgment, Halff relied upon, among other things, Stillwell's deposition testimony and the affidavits of Popken and Joni Caldwell.

Joni Caldwell has been the Human Resources Director at Halff since 2007. In her affidavit, she stated that, as result of the downturn in the economy, Halff laid off thirty employees in 2008. In May of 2009, Halff laid off an additional sixty employees, including Stillwell, due to the continued drop in the company's backlog or the amount of expected future work. Caldwell stated the terminated employees were selected based on their performance and their potential for contribution to the company. She further stated that Halff did not hire anyone to replace Stillwell. She stated that Halff did not terminate Stillwell because of his age or because he complained about the younger EITs.

Popken stated in her affidavit that she made the decision to hire Stillwell and that she was his immediate supervisor while he was employed at Halff. Popken confirmed that beginning in 2005, Stillwell began complaining about the work ethic of three of the EITs. He complained that these individuals came in late, chatted in their cubicles, and may have been improperly billing time on certain projects. In response, Popken reminded the employees that they were to record their time accurately. Like Caldwell, Popken testified to the economic downturn and the backlog it created for Halff. TxDOT and NTTA ceased soliciting proposals for new projects. According

to Popken, "NTTA placed all of its projects with Halff on hold at this time, including those previously awarded to Halff." Notably, on page 30 of the motion for summary judgment, Halff referred to NTTA's decision as "NTTA's hold on his *future* expected projects." (Emphasis added). Popken testified that this decision by NTTA directly affected the expected work of Stillwell. Like Caldwell, Popken stated that neither Stillwell's age nor his complaints regarding the EITs was a factor in terminating his employment.

Halff also attached excerpts from Stillwell's deposition to support its motion. Stillwell testified that during the period of time when he complained to Popken about the work ethic of the EITs, he continued to receive raises and bonuses. He said Popken essentially ignored his complaints.

Through its summary judgment evidence, Halff presented as its nondiscriminatory reason for its decision to terminate Stillwell's employment that the downturn in the economy forced it to reduce the number of its employees. Thus, the burden shifted back to Stillwell to show that Halff's stated reason was a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1826-27.

Stillwell filed a response to Halff's motion for summary judgment and as support relied upon his own affidavit and the deposition testimony of both Caldwell and Popken. Stillwell stated in his affidavit that, at the time of his termination, he was working on nineteen projects that required an additional six months to one-year to complete. Moreover, in contrast to Popken's testimony that the NTTA and TxDOT projects had been placed on hold, Stillwell testified that at the time of his termination, he was still working on both projects and they were ongoing.

In determining whether Stillwell's summary judgment evidence was sufficient to refute Halff's nondiscriminatory explanation, we find the United States Supreme Court's opinion in

*Reeves* instructive. *See Reeves*, 530 U.S. at 133, 120 S. Ct. at 2097. Roger Reeves was a supervisor at Sanderson Plumbing Products, Inc. (Sanderson). Part of his duties included recording the attendance and hours of the employees under his supervision. *Reeves*, 530 U.S. at 137, 120 S. Ct. at 2103. Russell Caldwell, the manager in Reeves' department notified Powe Chesnut, the company's director of manufacturing that production was down because employees were frequently absent, arrived late, or left early. *Reeves*, 530 U.S. at 137-08, 120 S. Ct. at 2103. Because the monthly attendance reports did not show any problem, Sanderson ordered an audit. The audit revealed numerous timekeeping errors and other misrepresentations by Reeves, another supervisor, and Caldwell. Sanderson fired Reeves and the other supervisor. At the time of his termination, Reeves was fifty-seven years old.

Reeves sued Sanderson alleging he was fired because of his age. *Reeves*, 530 U.S. at 138, 120 S. Ct. at 2103. At trial, Sanderson contended that it fired Reeves because he failed to maintain accurate attendance records. *Reeves*, 530 U.S. at 138, 120 S. Ct. at 2103-04. To support its nondiscriminatory explanation, Sanderson presented evidence that, as a result of an audit in 1993, Reeves was placed on ninety days probation for poor performance and an investigation in 1995 showed that Reeves was not accurately recording employees' absences and hours and that Reeves failed to discipline the absent and tardy employees. *Reeves*, 530 U.S. at 143-44, 120 S. Ct. at 2106-07.

To dispute Sanderson's nondiscriminatory explanation, Reeves presented evidence showing that the timekeeping errors referred to by Sanderson involved employees who were not marked late but who were recorded as having arrived at the plant at 7 a.m. for the 7 a.m. shift. These employees were counted late because they were not at their workstations at 7 a.m. Reeves also testified that the automated timeclock frequently failed to scan employees' timecards so the timesheets would not record any arrival times. When this occurred, Reeves would visually check

the workstations and record whether the employees were present. Reeves also presented evidence that it was not his responsibility to discipline employees for violations. Finally, Reeves testified that when he was fired, Chesnut stated it was because Reeves had failed to report an employee as absent on two days in September of 1995. Reeves countered with evidence that on those two days, he had been in the hospital and, thus, not at work. *Reeves*, 530 U.S. at 145, 120 S. Ct. at 2107. Reeves also introduced evidence that Chesnut had made age-based derogatory comments toward him. *Reeves*, 530 U.S. at 138, 120 S. Ct. at 2104. The case was tried to a jury and the trial court rendered judgment in favor of Reeves in accordance with the jury's verdict. *Reeves*, 530 U.S. at 139, 120 S. Ct. at 2104

The court of appeals reversed holding that Reeves failed to introduce sufficient evidence to sustain the jury finding of unlawful discrimination. *Id.* The court of appeals reasoned that, although Reeves may have offered sufficient evidence for a reasonable jury to find that Sanderson's explanation for its decision to terminate Reeves was pretextual, such evidence was not dispositive of the ultimate issue of whether Reeves' age motivated the decision. *Id.*

The Supreme Court framed the issue as to whether a plaintiff's prima facie case of discrimination, combined with sufficient evidence for a reasonable trier of fact to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. *Reeves*, 530 U.S. at 140, 120 S. Ct. at 2104. The Supreme Court held that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. *Reeves*, 530 U.S. at 147, 120 S. Ct. at 2108. In reversing the court of appeals, the Supreme Court held that Reeves' evidence of the falsity of Sanderson's explanation was sufficient for the jury to infer liability. *Reeves*, 530 U.S. at 149, 120 S. Ct. at 2109.

Unlike a jury verdict in *Reeves*, this case involves a summary judgment. If it is permissible for a jury to infer unlawful discrimination from evidence of the falsity of the employer's explanation, we hold summary judgment is improper where a plaintiff raises a fact issue as to the veracity of the employer's explanation.

In her deposition, Popken testified that Halff chose to terminate employees based on their potential value to the firm and their ability to perform work remaining to be done. She further testified that NTTA and TxDOT "had put work on hold." In her affidavit attached to Halff's motion for summary judgment, Popken stated that Halff selected the terminated employees based on their past performance and their potential for future contribution to the company. She further stated: "NTTA placed all of its projects with Halff on hold at this time, including those previously awarded to Halff. NTTA's decision to place its projects on hold directly affected the expected work for Mr. Stillwell."

In her deposition, Popken testified that Stillwell's experience as an electrical engineer could be used outside the context of the NTTA and TxDOT work. When asked if, at the time of his termination, Stillwell had any projects that he was working on that had to be given to other people to complete, Popken replied, "I don't think so."

The summary judgment evidence shows conflicting evidence as to whether NTTA and TxDOT had placed their current projects on hold or whether they were ongoing. Popken was unaware that Stillwell had numerous other projects he was working on in addition to the NTTA and TxDOT projects. He testified that these projects required an additional six months to one year to complete. We conclude Stillwell presented sufficient evidence as to the falsity of Halff's explanation to raise a fact issue precluding summary judgment on his age discrimination claim.

**Retaliation**

Stillwell also contends the trial court erred in granting summary judgment on his retaliation claim. It is unlawful for an employer to retaliate against a person who (1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a complaint, or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. *See* TEX. LAB. CODE ANN. § 21.055 (West 2006). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) a causal link existed between the protected activity and the adverse employment action. *Pineda v. United Parcel Serv., Inc.,* 360 F.3d 483, 487 (5th Cir. 2004). To satisfy the causation requirement for a prima facie case of retaliation, a plaintiff must establish that without the protected activity, the employee's prohibited conduct would not have occurred when it did. *Id.*

As with an age discrimination claim, if a plaintiff meets the burden to establish a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the adverse employment action. *Id.* The plaintiff then assumes the burden to present proof that the stated reason was pretextual. *Id.*

Circumstantial evidence sufficient to show a causal link between an adverse employment decision and the filing of a discrimination charge or suit may include (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and discharge. *Green v. Lowe's Home Ctrs., Inc.,* 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Stillwell contends his complaints regarding the engineers in training constituted a protected activity. Opposition to a discriminatory practice is a protected activity. *See City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008).

Halff moved for summary judgment on Stillwell's retaliation claims on the following four grounds: (1) Stillwell did not engage in a protected activity; (2) even assuming his complaints about the younger workers were a protected activity, there was no nexus between the complaints and his termination; (3) Stillwell cannot overcome the proffered nondiscriminatory reasons for his termination; and (4) there was no evidence his alleged protected activity was a motivating factor in the termination of his employment. We have already held that Stillwell raised a fact issue as to the veracity of Halff's nondiscriminatory reason.

Stillwell testified that for several years he complained to Popken regarding the work ethic of the three EITs under his supervision. His complaints included falsifying timesheets, chatting in their cubicles, arriving late, and not requiring them to work past 5:00 p.m. Stillwell attached as an exhibit to his affidavit, a typed general statement that was part of his EEOC Intake Questionnaire. In that statement, he provided detailed information regarding a meeting held on May 4, 2009, three days prior to his termination. Present at this meeting were Popken, N. Bradstreet, and himself. Stillwell stated the following:

> N. Bradstreet maintained that there needed to be [sic] way of "compensating" herself and the other EITs and Designers, and insisted that it was o.k. to charge time to all of the projects in the MEP Department, even though there was no actual work done on those projects, "because the projects belonged to the whole group." J. Stillwell disagreed, and stated that it was a lie, dishonest, against company policy and illegal to do this, and that there would be no way to accurately track projects or accountability on any project if N. Bradstreet, B. Brla, V. Ruder and N. Hearn actually did this.

Halff contends that the alleged protected activity was objectively unreasonable because it was wholly unrelated to any alleged unlawful employment practice. We disagree. Company policy required that all Halff employees were required to record their time worked accurately.

–11–

Stillwell complained to Halff numerous times that three of the EITs were not recording their time accurately and that they were not being held to comply with Hallf's policies that applied to all of its employees. *Three days prior to his termination*, Stillwell complained to Popken that allowing the EITs to record time not actually worked was "a lie, dishonest, against company policy and illegal." Popken participated in the decision to terminate Stillwell. We conclude this evidence is sufficient to raise a fact issue as to whether retaliation was a factor in Halff's decision to terminate Stillwell's employment.

We sustain Stillwell's issue. We reverse the trial court's judgment and remand this case to the trial court.[2]

/Martin Richter/

MARTIN RICHTER
JUSTICE, ASSIGNED

121654F.P05

---

[2] Having concluded that appellant raised fact issues precluding summary judgment, we need not address his contention that the trial court erred in overruling his objections to Halff's summary judgment evidence.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOHN STILLWELL, Appellant

No. 05-12-01654-CV        V.

HALFF ASSOCIATES, INC. AND
DIANE POPKEN, Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas.
Trial Court Cause No. DC-10-01050.
Opinion delivered by Justice Richter.  Chief
Justice Wright and Justice Moseley,
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant JOHN STILLWELL recover his costs of this appeal from appellees HALFF ASSOCIATES, INC. and DIANE POPKEN.

Judgment entered this 15th day of July, 2014.